387 F.2d 502
 73 P.U.R.3d 331
 PRESQUE ISLE TV CO., Inc., Johnston TV Company, Inc.,
Caribou TV, Inc., Petitioners,
v.
UNITED STATES of America and Federal Communications
Commission, Respondents.
VAN BUREN TV CABLE CO., Inc., Petitioner,
v.
UNITED STATES of America and Federal Communications
Commission, Respondents.
 Nos. 6896, 6897.
 United States Court of Appeals First Circuit.
 Dec. 18, 1967.
 
 Lee G. Lovett, Washington, D.C., with whom Joseph F. Hennessey, John N. Papajohn and Booth & Lovett, Washington, D.C., were on brief, for petitioners.
 Lenore G. Ehrig, Washington, D.C., Counsel, with whom Henry Geller, Gen. Counsel, John H. Conlin, Associate Gen. Counsel, Edward J. Kuhlmann, Counsel, Donald F. Turner, Asst. Atty. Gen., and Howard E. Shapiro, Atty., Dept. of Justice, were on brief, for respondents.
 Herbert M. Schulkind, Washington, D.C., with whom Peter Shuebruk, Howard Jay Braun and Fly, Shuebruk, Blume & Gaguine, Washington, D.C., were on brief, for intervenor.
 Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.
 ALDRICH, Chief Judge.
 
 
 1
 Petitioners, who operate community antenna television systems (CATV) in northern Maine, seek review of a Memorandum Opinion and Order of the Federal Communications Commission. Norhern Microwave Service, Inc., 1967, 7 FCC2d 115. A CATV system[1] picks up television signals by means of high antennae and distributes them to the homes of individual subscribers within the community served by the system. Section 74.1103 of the FCC rules 47 C.F.R. 74.1103, requires that CATV carry local stations, since a subscriber cannot, without extra equipment, receive any station not carried on CATV, and since it is thought desirable to protect local stations against outsiders. Presque Isle, in northern Maine, and the surrounding area are served by only one American commercial television station, WAGM-TV. Competition is provided to WAGM, however, by CHSJ-TV originating in St. John, New Brunswick, Canada, through its satellite station, CHSJ-TV-1 in Bon Accord, New Brunswick, hereafter Bon Accord. Petitioners' CATV systems carry Bon Accord as well as WAGM. As the only commercial American station, WAGM is an affiliate of all three American networks, CBS, NBC and ABC. Its licensee, Aroostook Broadcasting Corp., appears herein as an interenor on the side of the Commission.
 
 
 2
 The present controversy arises from the fact that Canadian stations prerelease American network programming. Section 74.1103(f) provides for same-day nonduplication: when a distant station carries a program on the same day as a local station, the distant station's broadcast may not be carried on CATV if the local station gives appropriate notice. This is sufficient protection against American competition, but Canadian stations prerelease a week or more in advance. WAGM sought a special fifteenday nonduplication order to protect it against the problems peculiar to Canadian prerelease. Petitioners not only opposed WAGM's request, but sought a complete waiver of section 74.1103(f) as to same-day nonduplication on the ground that Bon Accord's signals as received without CATV by antenna throughout the area served by WAGM were as strong or stronger than WAGM's. After a summary proceeding, the Commission more than granted WAGM's request, and denied that of petitioners.[2] It ordered that:
 
 
 3
 'The CATV systems shall not present in advance via a foreign station any domestic network program which is proposed to be broadcast by a U.S. television station entitled to and requesting program exclusivity under Section 74.1103, where such program is carried by said U.S. station on the date of initial domestic network presentation and, if a prime time program, entirely within prime time.'
 
 
 4
 Petitioners' initial claim before us is that the Commission lacks jurisdiction with respect to CATV. For this they rely upon Southwestern Cable Co. v. United States, 9 Cir., 1967, 378 F.2d 118, cert. granted 389 U.S. 911, 88 S.Ct. 235, 19 L.Ed.2d 258, Contra, Buckeye Cablevision, Inc. v. FCC, D.C.Cir., 1967, 387 F.2d 220. The Commission counters that this issue is foreclosed by 47 U.S.C. 405, which, in substance, provides that no 'questions of fact or law' can be brought to the reviewing court unless they have been raised before the Commission either initially or by a petition for rehearing.[3] Petitioners reply that jurisdiction is an exception. The statute does not purport to make any exception. We must determine, accordingly, whether this exception is to be implied, or, if not intended, is nevertheless required. We answer both questions in the negative.
 
 
 5
 Jurisdiction, even over the subject matter, may involve factual issues. In such an event there is every reason why the agency should pass upon the question initially, Myers v. Bethlehem Shipbuilding Corp., 1938, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638, and why Congress should wish to provide that the issue was foreclosed if the agency was not given the opportunity to do so. NLRB v. Community Motor Bus Co., 4 Cir., 1964, 335 F.2d 120; see Marshall Field & Co. v. NLRB, 1943, 318 U.S. 253, 63 S.Ct. 585, 87 L.Ed. 744. An expression of the agency's views may also be of value when jurisdiction is solely a question of law.[4] NLRB v. Hearst Publications, Inc., 1944, 322 U.S. 111, 130-131, 64 S.Ct. 851, 88 L.Ed. 1170; Macauley v. Waterman S.S. Corp., 1946, 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839; NLRB v. International Union of Operating Engineers, 3 Cir., 1966, 357 F.2d 841. Indeed, most issues of law considered in judicial review of agency decisions center around the scope of the agency's power. Unless it was obliged to, a matter which we will discuss later, we have no reason to suppose that Congress intended an exception in section 405 simply because the question of fact or law was that of the agency's power.
 
 
 6
 In advancing the broad proposition that the issue of jurisdiction 'is always open' petitioners cite principally cases involving appellate review of lower court decisions. E.g., Louisville & N.R.R. v. Mottley, 1908, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126. However, this review is, in all strictness, but a continuation of the original process. As the Court pointed out in Treinies v. Sunshine Mining Co., 1939, 308 U.S. 66, 70, 60 S.Ct. 44, 84 L.Ed. 85, the issue affects the jurisdiction of the appellate court itself. To hold inquiry foreclosed, if in fact there was no jurisdiction, would be a usurpation of authority that Congress had not conferred. Cf. Mansfield, C. & L.M. Ry. v. Swan, 1884, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462. Whether the result would be the same if Congress were expressly to provide that jurisdiction is to be assumed if not contested at the district court level is another matter.
 
 
 7
 The more troublesome cases are those where similar observations have been expressed in the course of proceedings brought to review agency decisions. In some no reference has been made to statutory limitations upon the right to seek review. United States v. L. A. Tucker Truck Lines, Inc., 1952, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54; Manual Enterprises, Inc. v. Day, 1962, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639, opinion of Mr. Justice Brennan at 499, n. 5, 82 S.Ct. at 1443. In some the Court refused to allow nonjurisdictional issues to be raised, noting briefly, in passing, that there might be an exception for jurisdiction. NLRB v. Ochoa Fertilizer Corp., 1961, 368 U.S. 318, 82 S.Ct. 344, 7 L.Ed.2d 312; United States v. L. A. Tucker Truck Lines, Inc., supra. Thus in Ochoa at 322 of 368 U.S., at 347 of 82 S.Ct., quoting the earlier case of NLRB v. Cheney California Lumber Co., 1946, 327 U.S. 385, 388, 66 S.Ct. 553, 90 L.Ed. 739, the Court mentioned a possible exception where the agency 'patently traveled outside the orbit of its authority.' When this would be, the Court did not say. We have found no decision in fact reversing an agency's finding of jurisdiction when the issue was first contested on review.
 
 
 8
 In the light of the express limitation that Congress has placed upon the scope of administrative review it seems to us that we need not expand the reservations that the Court has expressed, and, indeed, that we may construe those reservations strictly. This would impinge upon no constitutional right of the petitioners. Section 405 clearly does not mean that they could not, if diligent, have had a full and fair hearing. Cf. Crowell v. Benson, 1932, 285 U.S. 22, 42-65, 52 S.Ct. 285, 76 L.Ed. 598; NLRB v. Jones & Laughlin Steel Corp., 1937, 301 U.S. 1, 46-49, 57 S.Ct. 615, 81 L.Ed. 893. Even where review of an agency decision is constitutionally required, reasonable limitations may be imposed, including limitations ensuring that objections will be raised at the proper time. Yakus v. United States, 1944, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; cf. Phillips v. Commissioner of Internal Revenue, 1931, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289. The reasonableness of requiring an early questioning of jurisdiction we have already adverted to.
 
 
 9
 So far as effective waiver is concerned there is nothing peculiarly sacrosanct about subject matter jurisdiction. As the court held in Treinies v. Sunshine Mining Co., supra, 308 U.S. at 74-78, 60 S.Ct. 44, one may, by failing to appeal, permit a finding of subject matter jurisdiction to become res judicata and beyond further attack. See Chicot County Drainage District v. Baxter State Bank, 1940, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329; Dowell v. Applegate, 1894, 152 U.S. 327, 14 S.Ct. 611, 38 L.Ed. 463, and cases cited; C. A. Wright, Federal Courts 44-45 (1963). We see no distinction, with respect to due process, between losing the right to contest jurisdiction by not pursuing the proper method of review, and losing it by not pursuing the proper method of contesting it in the first place. Indeed, even fundamental constitutional rights may be waived if not initially asserted. See Henry v. State of Mississippi, 1965, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408. Any personal hardship that petitioners suffer they must be considered to have brought upon themselves. Lichter v. United States, 1948, 334 U.S. 742, 789-793, 68 S.Ct. 1294, 92 L.Ed. 1694; Falbo v. United States, 1944, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305, explained by Estep v. United States, 1946, 327 U.S. 114, 123, 66 S.Ct. 423, 90 L.Ed. 567; see Campbell v. City of Olney, 1923, 262 U.S. 352, 43 S.Ct. 559, 67 L.Ed. 1021.
 
 
 10
 There may, of course, come a point where an agency's 'patently' exceeding the orbit of its jurisdiction offends a public interest quite apart from the interests of the parties. We would so consider Manual Enterprises, Inc. v. Day, supra. Whatever may be the appropriate limits before an agency has gone so far that a court should notice it on review in the interest of sound administration, or for some other special reason, we need not determine. See L. Jaffe, Judicial Control of Administrative Action 454-58 (1965). We are satisfied that in any event they have not been reached in the case at bar. This is not a case, for example, where the agency is asserting an authority which would be beyond the power of Congress to confer, nor an authority entirely foreign to and inappropriate for this particular agency. We hold that even though the question of statutory interpretation was, strictly, a jurisdictional matter, it was a question of law which petitioners were obliged to raise ab initia. We believe that section 405 calls for this result and that no constitutional principles or public policy require us to construe it otherwise.
 
 
 11
 It follows that we do not have before us petitioners' contentions that the Commission lacked power to issue the order; that section 74.1109 under which the order was issued was invalid or inapplicable; /5/ and that, in any event, it constituted a cease and desist order made without regard to the requirements of 47 U.S.C. 312.[6] We turn to petitioners' claims that were presented to the Commission. The more substantial of these were summarized by the Commission as follows.
 
 
 12
 'The essential arguments advanced * * * are that * * * (Bon Accord) allegedly provides a stronger signal to the area and is available without cable; that * * * (restrictions on petitioners) would, therefore, impose an artificial reception situation and disrupt CATV service; that this action would financially injure and discriminate against the CATV's, frustrate the purpose of the rules, and, since * * * (Bon Accord) is readily available off the air, would fail to preclude viewing of prereleased network programs on * * * (Bon Accord) or remove its competitive impact upon WAGM-TV.'
 
 
 13
 In sum, petitioners claimed that, if anyone was to be protected, the FCC's own reasoning, if not its rules,[7] required that it be Bon Accord. See Second Report and Order, 1966, 2 F.C.C.2d 725, 745-50; First Report and Order, 1965, 38 F.C.C. 683, 697-715, 719-721.
 
 
 14
 In reply WAGM did not deny petitioners' assertions as to the presence and strength of Bon Accord's signals on an off-the-air basis. Its position was that petitioners 'misconceived' the issue. The point, according to WAGM, is that foreign stations, and hence their duplicators, are not entitled to any protection under the rules at the expense of domestic stations, and hence the factual claim as to Bon Accord's signals was irrelevant.
 
 
 15
 In its memorandum opinion the Commission avoided meeting the issue. It did say, 'Prerelease of a foreign station presents a totally different situation calling for corresponding different relief. * * * (WAGM) has adequately demonstrated a need for such relief.' However, whether foreign stations were to be ignored when they were already fully present in the area, the Commission did not discuss or, apparently, consider.[8] Instead, without elaboration or discussion it concluded that petitioners' claims 'which concern signal strength and possible economic impact upon the CATV systems are inadequately supported and must be rejected.'
 
 
 16
 This we cannot understand. As a matter of pleading petitioners' allegations as to signal strength were unexceptionable and uncontradicted. They were fully supported by appropriate affidavits, again uncontradicted. There was no justifiable basis for the Commission's sweeping them aside with a part of one sentence.[9] Universal Camera Corp. v. NLRB, 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; Saginaw Broadcasting Co. v. FCC, 1938, 68 App.D.C. 282, 96 F.2d 554, cert. denied 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391.
 
 
 17
 Petitioners' allegations with respect to economic impact, except to be characterized as 'frivolous' by WAGM, were not affirmatively met by anything in the record. It is true that they were less directly supported than the allegations as to signal strength. However, the Commission has recognized that even the impact of accomplished events-- and the impact here was entirely prospective-- is almost impossible to show in a particular case, and has therefore relied on general considerations of probability such as petitioners here assert. E.g., First Report and Order, supra, at 706-13. In the easier situation presented by transmissions piped in from a distant station, it thoroughly analyzed such considerations before choosing a remedy. It is impossible for us to tell whether it is now relying on a similar, unstated analysis, or, in the light of certain statements in its present opinion, on a novel allocation of the burden of proof. It is even possible that it found no probability of economic loss simply because it rejected petitioners' underlying allegations as to signal strength. On this basis review is difficult. See, e.g., NLRB v. Metropolitan Life Ins. Co., 1965, 380 U.S. 428, 85 S.Ct. 1061, 13 L.Ed.2d 951; Phelps Dodge Corp. v. NLRB, 1941, 313 U.S. 177, 193-197, 61 S.Ct. 845, 85 L.Ed. 1271.
 
 
 18
 As we have said, petitioners have presented an unusual situation. On the record they have brought nothing into the area, so far as Bon Accord is concerned, but the convenience of permitting their subscribers to view it on their equipment without the purchase of conventional equipment, or an additional switching device. The statement in the Commission's brief that petitioners 'have strengthened the viewers' reception' of Bon Accord, undermining WAGM's market, is true only in this very limited sense. Possibly even this minor strengthening should be forbidden in the case of foreign stations. If so, we would agree that it would be difficult for petitioners to say that more than same-day protection was an unreasonable response to special prerelease practices. See Jamestown Cablevision, Inc., 1967, 6 FCC2d 309. Had the Commission ruled that petitioners' claim concerning signal strength was correct but irrelevant, particularly if some reasoning had been given, its decision and order might have been supportable. Possibly the Commission might have analyzed the predictions of economic damage and decided, for reasons not presently clear to us, that the harm being done to WAGM by the petitioners was more significant than the harm which would result were they restricted. The Commission, however, was unwilling to make these decisions, and its shutting its eyes to conspicuous facts is some measure of its unwillingness. Within broad limits the Commission may make policy determinations, but if review is to have any meaning the Commission cannot, in effect, back into them without openly making them, by ignoring the facts presented.
 
 
 19
 The Commission's order is vacated and the cases remanded.
 
 
 
 [1]
 For the FCC definition of a CATV system see 47 C.F.R. 74.1101(a). See generally Note, The Wire Mire: The FCC and CATV, 79 Harv.L.Rev. 366 (1965); Note, CATV and Copyright Liability, 80 Harv.L.Rev. 1514 (1967)
 
 
 [2]
 Of the seven commissioners, two were absent; one would have found for petitioners; one concurred in the result
 
 
 [3]
 The exhaustion of administrative remedy provision is not usually phrased so exactly, the customary one being, 'No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission,' see, e.g., 15 U.S.C. 77i(a), 78y(a), often with an exception for cause shown. See e.g., 15 U.S.C. 79x(a), 717r(b); 16 U.S.C. 825l(b); 29 U.S.C. 160(e), 210(a); 49 U.S.C. 1486(e). The language of section 405 is sharper, but we do not regard it as substantially different, unless one were to consider, which we do not, that objections to orders do not embrace pure questions of law. Neither do we rely on petitioners' failure to list the jurisdictional issue in their statement of points on review, or on their explicit disclaimer of reliance on the issue in preliminary briefs
 
 
 [4]
 Even when the agency's position on a question of law is already known, as here, it normally should not be bypassed, United States v. L. A. Tucker Truck Lines, Inc., 1952, 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54
 
 
 [5]
 This rule permitted ad hoc exceptions to the general rules upon a special showing, and was the basis of the requests by WAGM and petitioners that led to the order in question
 
 
 [6]
 Actually, this last observation should be amplified. Were petitioners correct in asserting this was a cease and desist order, we would have no jurisdiction ourselves. Cf. Valley Vision, Inc. v. FCC, D.C.Cir., 1967, 383 F.2d 218; 47 U.S.C. 402(a) and (b)(7). However, we agree with the Commission that the proceeding shaped a rule to govern petitioners' future operations; it did not try to stop violations of a license, statute, or past rule. A cease and desist order was not warranted and was not sought
 
 
 [7]
 Section 74.1103 protects only 'television stations,' and these are defined so as to exclude foreign broadcasters, 47 C.F.R. 73.606, 74.1101(b); see Buckeye Cablevision, Inc., 1966, 3 FCC2d 808, 810 n. 4. Compare Amendment of Sections 74.1105 and 74.1107, 1967, 8 FCC2d 738. Aside from this problem, Bon Accord seems to fall within the definition of broadcasters entitled to protection against WAGM, although petitioners did not furnish any evidence that its quality or 'local' character renders it as deserving of protection as a comparable domestic broadcaster
 
 
 [8]
 It did cite two earlier decisions, but neither dealt with this question
 
 
 [9]
 We may note that in this court Commission counsel makes no attempt to justify the Commission's procedure. Counsel's only method of dealing with petitioners' factual position is to ignore it altogether, or, occasionally, tacitly assume it without dealing with it. If petitioners in their reply brief show some exasperation, they should not be severely criticized