**CORNELL UNIVERSITY, Petitioner,**

v.

**UNITED STATES of America and Federal Communications Commission, Respondents.**

**Clear Channel Broadcasting Service, Loyola University, Intervenors.**

**No. 753, Docket 33915.**

United States Court of Appeals, Second Circuit.

Argued May 4, 1970.

Decided June 8, 1970.

Roy F. Perkins, Jr., Marcus Cohn, Paul Dobin, Washington, D. C., for petitioner.

Joseph A. Marino, Henry Geller, John H. Conlin, FCC, Richard W. McLaren, Gregory B. Hovendon, Dept. of Justice, for respondents.

Robert A. Marmet, R. Russell Eagan, Theodore A. Shmanda, Kirkland, Ellis, Hodson, Chaffetz, Masters & Rowe, Washington, D. C., for intervenors.

Before LUMBARD, Chief Judge, and WATERMAN, Circuit Judge, and JAMESON, District Judge.*

WATERMAN, Circuit Judge:

Cornell University is the licensee of Standard Broadcast Radio Station WHCU in Ithaca, New York. WHCU is designated a Class II station by the Federal Communications Commission, and operates with a power of five kilowatts during the day. To the limited extent that it has been permitted to operate in the past during the nondaylight hours between sunset and sunrise, the station has then used a power of one kilowatt.

The present dispute arises from the FCC's recent ruling that certain Class II stations, including WHCU, may no longer operate between 6:00 A.M. and sunrise during the winter months when sunrise occurs after that hour. The background and nature of the FCC's presunrise regulations have been described in detail by this court in WBEN, Inc. v. United States, 396 F.2d 601 (2 Cir.), cert. denied, King's Garden Inc. v. FCC, 393 U.S. 914, 89 S.Ct. 238, 21 L.Ed.2d 200 (1968), and therefore a more summary description will suffice here.

The FCC has designated some 24 frequencies as "clear channels" for occupation by one highpowered station in Class I–A and, as well, for a number of Class II stations. The Class I–A station operates both day and night. During the nighttime hours the radio signal of this station not only follows the curve of the earth, as it does during the day, but it can also be bounced off the earth's ionosphere, returning to ground at great distances from the point of origin. Because of this socalled "skywave" phenomenon, the range of service of Class I–A stations is much greater at night than during the day and the operation of the Class II stations on the same frequency must be curtailed at night or interference will result. This interference, if it does occur, is such that the skywave of the Class I–A station would be destroyed not only in that area where the interfering Class II station's signal is distinctly intelligible, but also in a larger area beyond the Class II station's effective range where the two signals so cancel out each other that neither is intelligible. This second kind of interference, if it were permitted on all clear channels, would result in large geographical areas where listeners could not pick up any station at all on their AM radios at night. By avoiding such interference through this pattern of allocation "the Commission has succeeded in providing skywave radio service to some 20,000,000 persons who would not receive any groundwave signal at night."

* Of the District of Montana, sitting by designation.

WBEN, Inc. v. United States, *supra* at 606.

At a Class II station, WHCU has always been restricted to daytime operation in order to avoid interference with WWL in New Orleans, the dominant I–A station on its frequency. Until 1967 the FCC permitted an exception to this rule and Class II stations such as WHCU were permitted to begin operating at 6:00 A.M. or one hour prior to sunrise, whichever was later, provided the permission of the dominant Class I–A station on its frequency were obtained. Beginning in 1956 WHCU availed itself of this permissible exception to the rule and, with the permission of station WWL in New Orleans, established an early morning program of local interest. According to WHCU's affidavit submitted to the FCC in this proceeding, its early morning program "provides extensive news, weather, farm-market reports, sports reports, winter road conditions, school closings, calendars of events, and commentary and analysis on local and regional news, together with daily reports and features from Cornell University and the County Agricultural Agent * * *."

In 1967, however, the FCC extensively revised its rules concerning presunrise operations. The nature of this revision is described in WBEN, Inc. v. United States, *supra*, which upheld the rules, as revised, against a number of attacks. The change to which WHCU objects in this proceeding is the institution of a new regulation preventing any Class II station located to the *east* of the dominant Class I–A station on its frequency —a category which includes WHCU— from beginning operation until dawn at the Class II station, although Class II stations to the *west* of the dominant Class I–A station are permitted to begin operation at the moment the sun rises at the Class I–A location, despite the fact that it still would be dark at the Class II location.

Cornell University filed a Petition for Reconsideration of the promulgation of this regulation and asked the FCC to permit continued early morning operation by WHCU. The FCC declined to do so. However, the Commission did decide to conduct a separate rule-making proceeding to consider the situation of the 26 Class II stations located east of dominant Class I–A stations on their respective frequencies. 10 F.C.C.2d 313. Class II stations of this type are hereinafter called "eastern Class II stations."

Cornell filed comments in this proceeding on November 20, 1967 and reply comments on February 16, 1968 and April 28, 1968. Meanwhile, at the time the FCC promulgated its new regulations, station WWL in New Orleans had withdrawn the permission it had formerly granted WHCU to operate between 6:00 A.M. and dawn, and WWL filed comments and reply comments in the rule-making proceeding opposing WHCU. By its Report and Order adopted July 29, 1969 and released August 1, 1969, the FCC declined to change its proscription of presunrise operation by eastern Class II stations. 18 F.C.C.2d 705 (1969). WHCU petitions us for review of this order and, until now, it has obtained stays of the FCC's mandate so that its early morning program has not yet been canceled.

WHCU makes two principal arguments. The first is that the FCC did not consider certain critical policy issues and technical data in formulating its rule. The second is that the FCC erred procedurally in that it should have conducted an individual *ad hoc* hearing bearing only on WHCU's operation and should not have resorted instead to a rule-making proceeding. We do not find either of these two arguments persuasive, and we uphold the decision of the FCC.

I.

Cornell contends first that the Commission erroneously failed to consider the value of the content of WHCU's presunrise program to the local audience when compared with the value of WWL's program content to nearby New York State listeners at that hour. Undeniably

WHCU's program provides considerable information of particular local interest. WHCU intensifies the relevance of the program by arguing that many persons in its audience can listen to this material only during the hour here in question for these listeners must leave home early in the morning for farm work, factory jobs, or school. Also in winter some of them return home only after dark and thus could not hear these WHCU programs broadcast at any later time in the day. Cornell also suggests that the loss of revenue which would result from canceling the presunrise program could force it to curtail its free public service programming at other times of the day. In support of WHCU local citizens involved in education and local public affairs wrote to the FCC to confirm WHCU's estimate of the value of the station's presunrise program.

WHCU does not contest the validity of the FCC's general policy that the value of specific programs should not determine whether local programs should be given precedence over skywave programs. Station management and the programming decisions that a station makes are both subject to change, and the FCC would find itself continually forced to re-evaluate highly subjective decisions as to relative program merit as program content shifted. However, WHCU con-tends that its case is a highly individual case and, as such, it should be treated on an *ad hoc* basis. Only a few Class II stations located east of a dominant Class I–A station seek presunrise privileges, and the Commission did give considerable individual attention to WHCU when the rule-making proceeding was conducted. WHCU also contends that it is deserving of special consideration be- · cause it serves as the voice of a major university and it has been a pioneer broadcasting service. It points out that its presunrise program is of long standing, and it contends that without great difficulty the FCC could deal with any unforeseen future developments in program content.

We disagree with this analysis. We hold that the FCC was justified in refusing to give decisional significance to the content of WHCU's presunrise program. The FCC found that "WHCU renders a presunrise a. m. service to a fairly small area and population, and it provides the only such service to a much smaller area and population, since another Ithaca station operates presunrise with the same power." 18 F.C.C.2d 705 at 725 (1969). The service loss was found to be even smaller if F.M. radio and the possibility of emergency presunrise broadcasts by WHCU are taken into account. By contrast, the FCC found that a very substantial interference with WWL's signal, both groundwave and skywave, results from WHCU's presunrise operation. The Commission's report states that WWL presents news, weather, and farm information during the hours being contested and that this programming "appears to be of at least possible significance to distant skywave and fairly distant groundwave audiences if they could receive it with interference from WHCU removed." *Id.* at 730. In summary, the FCC concluded that the impact of WHCU's presunrise operations on WWL's service outweighs the value of WHCU's service.

We are not certain exactly what WHCU objects to in the FCC's analysis of its case. Contrary to the station's assertion, the Commission did consider the value of the program being eliminated. It concluded that the value of this program, however great, was outweighed by the value of skywave service to a much larger area and a much larger potential listener population than WHCU can serve. We do not propose to substitute our judgment for that of the FCC or to disturb the Commission's conclusions. As we stated in Radio Relay Corp. v. FCC, 409 F.2d 322, 326 (2 Cir. 1969):

> \* \* \* it is appropriate that we note the narrow scope afforded a court of appeals in reviewing the Commission's actions under the Federal Com-

munications Act, 47 U.S.C. § 151 et seq. In such cases our task is limited to determining "whether the Commission has been guided by proper considerations in bringing the deposit of its experience, the disciplined feel of the expert, to bear"; that is, "whether the Commission has fairly exercised its discretion within the vaguish, penumbral bounds expressed by the standard of 'public interest.'" FCC v. RCA Communications, Inc., 346 U.S. 86, 91, 73 S.Ct. 998, 97 L.Ed. 1470 (1953). Thus, "courts should not overrule an administrative decision merely because they disagree with its wisdom," but only if they find it to be "arbitrary or against the public interest as a matter of law." Radio Corp. v. United States, 341 U.S. 412, 420, 71 S.Ct. 806, 810, 95 L.Ed. 1062 (1951).

We hold that here the Commission has acted within the permissible bounds of its discretion in refusing to accord controlling weight to station program content.

■ Petitioner also argues that the FCC acted discriminatorily in permitting Class II stations to the west of Class I–A stations to begin operating as soon as the sun rises at the Class I–A location, whereas WHCU must wait until sunrise at its own location. It appears, however, that WHCU failed to raise this contention before the FCC, despite the fact that the distinction was originally made between western Class II stations and eastern Class II stations before the time the proceeding below was announced. Consequently the FCC was deprived of an opportunity to show in justification of its order that significant differences in interference levels justify the disparate treatment of the two kinds of stations. We therefore decline to rule on this point. See Presque Isle TV Co. v. United States, 387 F.2d 502 (1 Cir. 1967).

■ WHCU next argues that the FCC failed properly to compute the amount of interference which WHCU's presunrise signal would cause to WWL. Normally the FCC supposes a ratio of 20 to 1 between the desired and the undesired signals. Cornell, however, submitted evidence that the actual ratios might be 10 to 1 or even 5 to 1. The FCC found that the diminution of skywave service caused by WHCU's presunrise operation has been "substantial even if weight is attached to WHCU showings based on 5-to-1 and 10-to-1 interference ratios, which WHCU claims are more appropriate than the 20-to-1 standard set forth in the rules * * *." 18 F.C.C. 2d at 725. Clearly, therefore, the FCC considered this argument and rejected it. Moreover, another argument of WHCU, that, as no listeners wrote letters complaining of WHCU's interference with WWL, the FCC ruling was arbitrary, need not be given any weight by us inasmuch as the Commission by means of engineering computations found substantial interference to exist.

■ WHCU argues that its interference with WWL is insignificant for another reason. It states that some fourteen stations which provide skywave service on reserved frequencies can be received with varying degrees of clarity in the area of WHCU's putative interference with WWL, whereas the FCC's stated goal is to provide a minimum of only four skywave stations to listeners in any given area. However, the Commission observed in its report that skywave signals fluctuate in their intensity and that a large number of such signals are desirable in order to insure that several signals can be received at any given time. In the face of this position taken by the FCC we are unwilling to assume that WWL's skywave service on its frequency is a superfluous service.

■ WHCU next argues that the FCC erroneously assumed that its ruling in the WHCU case involved the integrity of the entire clear channel system and the integrity of its rules for presunrise operation by all the Class II stations. We do not follow the thrust of this contention. If the station means to say that the Commission believed that

its decision in the case of WHCU would have precedential effect on similar applications by other eastern Class II stations, the Commission's conclusion seems unassailable. On the other hand, it does not appear that the FCC required WHCU to disprove the value of the entire clear channel system in order for it to prevail on its special claims. The Commission considered the merits of WHCU's claims with great thoroughness, and there is no indication whatsoever that it considered that station's representations for individual relief to be meritorious but nevertheless rejected them solely because the Commission was unwilling to extend presunrise privileges to other stations which WHCU points out could have been distinguished from WHCU.

■ WHCU's second principal contention is that the FCC should have afforded it an individual hearing leading to an *ad hoc* decision and should not have considered its case in the context of a rule-making proceeding. In particular, the station argues that the Commission should have devoted more attention to its claim that little actual interference resulted to WWL from WHCU's early morning signal, and to its representation that the reduction in revenue caused by deletion of the presunrise program would cause it to curtail its public service programming at other times of the day.

We reject these contentions. In WBEN, Inc. v. United States, *supra*, we held that no *ad hoc* proceeding was required where the rights of stations were being restricted, even during the life of their existing licenses, unless the revision concerned " 'a [license] modification order of the Commission and is concerned with the conduct and other facts peculiar to an individual licensee.' " *Id.*, at 618, quoting California Citizens Band Ass'n v. United States, 375 F.2d 43 (9 Cir.), cert. denied, 389 U.S. 844, 88 S.Ct. 96, 19 L.Ed.2d 112 (1967). We went directly on to say:

Adjudicatory hearings serve an important function when the agency bases its decision on the peculiar situation of individual parties who know more about this than anyone else. But when, as here, a new policy is based upon the general characteristics of an industry, rational decision is not furthered by requiring the agency to lose itself in an excursion into detail that too often obscures fundamental issues rather than clarifies them.

The policy expressed in WBEN applies here as well. WHCU is not protesting a license modification in a license modification proceeding. The rule which the Commission formulated applies to all eastern Class II stations, and we decline to find this category to be a meaningless or an arbitrary one. Although the Commission considered WHCU's situation in detail, as representative in many ways of the class to which the rule applies, it did not purport to base its decision solely upon the characteristics of WHCU alone. Indeed, it is upon this very fact that WHCU bases the first of its two arguments, its contention that the Commission erred in determining on *general* considerations that the loss of skywave service to a large population is more important than local programming might be to a smaller population.

The petition for review is denied.