The COLBY–BATES–BOWDOIN EDUCATIONAL TELECASTING CORPORATION, Petitioner,

v.

FEDERAL COMMUNICATIONS COMMISSION and the United States of America, Respondents,

Public Cable Company, Intervenor.

No. 75–1425.

United States Court of Appeals, First Circuit.

Argued April 5, 1976.

Decided April 30, 1976.

---

John L. Tierney, Washington, D. C., with whom James A. Gammon and Gammon & Tierney, Washington, D. C., were on brief, for petitioner.

Richard J. Bodorff, Counsel, F. C. C., Washington, D. C., with whom Ashton R. Hardy, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, F. C. C., Thomas E. Kauper, Asst. Atty. Gen., and Carl D. Lawson, Atty., Dept. of Justice, Washington, D. C., were on brief, for respondents.

Before ALDRICH and McENTEE, Circuit Judges, CAFFREY,* District Judge.

ALDRICH, Senior Circuit Judge.

Subject to a procedural matter that the Commission claims, we believe incorrectly in this instance, raises a jurisdictional issue, the questions in this petition to review revolve upon the meaning and application of Rule 76.61(d) of the Federal Communications Commission (47 C.F.R. § 76.61(d)) which prescribes what signals may be carried by a major cable television system, hereafter CATV. The section reads, in presently material part,

> "(d) . . . Such system may also carry any other noncommercial educational signals, in the absence of objection filed pursuant to § 76.7 by any local noncommercial educational station or State or local educational television authority."

Since the Commission favors the widest possible dissemination of all signals, and the legitimate complaint of a noncommercial educational broadcaster is to "possible erosion of local support among cable television subscribers," *Cable Television Report and Order,* 36 F.C.C.2d 143, 180 (1972), the Com-

* Sitting by designation.

mission limits objections to the importation of distant (*i. e.,* incapable of local off-air reception) signals. *Information Transfer, Inc.,* 38 F.C.C.2d 335 (1972). In *Norristown Distribution Systems, Inc.,* 38 F.C.C.2d 350 (1972), in applying the rule to deny the applicant CATV a certificate to include carriage of a distant educational signal, it stated as follows:

"(b) Section 76.61(d) of the rules permits carriage of distant out-of-state educational stations proposed in certification applications in the absence of opposition of local educational stations or authorities. The objections submitted herein, in the absence of rebuttal by the cable system, persuades us to deny carriage of WNET. We emphasize, however, that Section 76.61(d) does not require automatic denial of distant educational signal carriage in the face of local educational signal objection. *Such objection must be supported by probative evidence.*" (Emphasis suppl.)

The Commission held the objector's showing to be sufficient.

In the present case applicant Public Cable Company holds franchises to construct and operate a CATV at Portland and South Portland, Maine. In August, 1974 it gave public notice of its intention to carry the signals of ten TV stations, including four noncommercial educational signals, three being local, including petitioner's WCBB, and one distant, WGBH–TV, of Boston, Massachusetts. Petitioner, Colby-Bates-Bowdoin Educational Telecasting Corporation, hereafter Colby, by appropriate pleadings supported by affidavits, objected to the inclusion of the WGBH–TV signal. It now seeks review of the Commission's order denying the objection.

To Colby's pleading and affidavits Public Cable filed a "Response." Other than asserting that Colby's allegations were "conclusional and wholly self-serving" and contained "no specific factual evidence whatsoever," the response contributed nothing. In a way it contributed less than nothing, since Public Cable requested that its application be granted on the "precedent" established

by *Norristown.* So far as being a precedent is concerned, in *Norristown* the Commission denied an application with less in the way of objections than Colby raised here.

In *Norristown* the objector's affidavits consisted of general allegations that the CATV was within the noncommercial educational TV objector's primary service area, and that the objector received financial support therefrom. No population figures, or contribution figures, were given. Colby has made the same allegations, and has given statistics for both. In addition, Colby is already faced with two other noncommercial educational competitors, a fractionalization problem, while the objector in *Norristown* had none. Yet, the Commission was satisfied that *Norristown's* objector had furnished "probative evidence," while Colby's showing is denominated "speculative."

Furthermore, if we were to notice an off-the-record fact, it would be that WGBH–TV is a persistent and skillful fundraiser, precisely the type of distant import, if the "special protection," *Second Report & Order,* 2 F.C.C. 725, 760, 762 (1960); *Reconsideration of Cable Television Report & Order,* 36 F.C.C.2d 326, 330 (1972), we would suppose Rule 76.61(d) was directed to, is still intended. We can think of nothing more threatening to an already crowded local educational enterprise than the importation of a further, "big" competitor.

We divide Colby's complaints into three. (1) The Commission, without notice, placed a substantially higher burden of pleading on it than it had announced in *Norristown.* (2) The burden established by the Commission is almost impossible to fulfill substantively. (3) The Commission "noticed" facts that were not in the record, and did so without affording Colby an opportunity to meet them before it considered these facts to reach its decision.

■ 1. There is no reason why an administrative body cannot change its procedures, even without notice, so long as there is no due process loss of substantive rights. We do not agree with the contention in the Commission's brief that its decision in *Amherst Cablevision, Inc.,* 51 F.C.C.2d 408

**14**

(1975), provided adequate notice to enable Colby to make the newly required showing before the decision was made. Nevertheless, the path was open to Colby to point out that it had, in effect, been misled, and seek reconsideration on such further showing as might respond to the Commission's requirements. Our primary concern is with Colby's second point.

2. In its opinion herein, *Public Cable Co.*, 55 F.C.C.2d 383, 384, (1975) the Commission said,

> "Colby has failed to support substantially its claim of adverse impact or to show that the public will lose service. It has not proven that audience fractionalization necessarily will result in a loss of WCBB contributors, nor has it submitted probative evidence indicating that a specific percentage loss in contributors will equal the same percentage loss in contributions. . . . Colby's citation of *Norristown, supra,* is inapposite. In that case we found the unrebutted allegations of financial loss by the local educational station to be persuasive in denying carriage of the distant educational signal. In this case the local educational station claims adverse financial impact while the system disputes that claim. We have examined Colby's arguments and found them to be speculative. Therefore, we must deny the oppositions to these applications."

Colby feels that this is not merely a reappraisal of standards, to use the characterization in the Commission's brief, but a disquieting, as well as puzzling change. On its own statement in *Norristown* the Commission there required, and accordingly must have considered that it received, "probative evidence." When Colby submitted the same and more, it did not suddenly cease to be evidence and become "speculative." Nor, with due respect to the Commission, did it become less "persuasive" because it was "rebutted" by the applicant. To rebut is to refute, to respond by something contrary. All that Public Cable did here was to press its case and say Colby had not alleged enough. This did not "rebut"

anything. *See Presque Isle TV Co. v. United States,* 1 Cir., 1967, 387 F.2d 502, 507. Unless it be assumed that the applicant in *Norristown* withdrew its request to carry the objected-to-signal, *Norristown* and *Public Cable* were on a par, except that Public Cable filed a formal response and Norristown did not.

Moreover, we confess to be somewhat at a loss to know how a station could ever prove "that audience fractionalization *necessarily* will result in a loss of . . . contributors," (emphasis suppl.), or could submit "probative evidence [particularly under the Commission's new view of what is not probative evidence] indicating that a *specific* percentage loss in contributors will equal the *same* percentage loss in contributions." (Emphasis suppl.) Not only does this position seem incompatible with the Commission's pledge to accommodate "[t]he principal concern of noncommercial educational broadcasters," which is "possible erosion of local support among cable television subscribers," *Cable Television Report,* ante, but in our experience covering all kinds of litigation we have never seen demanded such a high burden of proof as to future consequences. While we do not wish to parade "horribles," its logic would mean that if three more similar CATV's each were to bring WGBH–TV to additional parts of Colby's primary audience, over half of it would be invaded, yet the damage would still be "speculative."

3. Colby claims that for the Commission to look to general statistics based upon averages, and, without affording Colby an opportunity to respond, make factual determinations with respect to Colby, was improper. The Commission replies that Colby should have filed a petition for reconsideration. 47 U.S.C. § 405. This is not necessarily an answer. At some stages of its parameters judicial notice presents vexing problems, and there may be situations where a party should be afforded an opportunity to be heard before a decision is made which it may be difficult to change. *Cf.* K. Davis, Administrative Law Treatise, § 15.-10, at 401–03 (1958).

We do not propose to pursue any of these matters to a final determination. We do have some feeling that Colby was hasty in not seeking reconsideration. At the same time, it was perhaps not entirely unreasonable in believing that the Commission had committed itself so strongly, particularly on account of what it said on the second issue, that requesting reconsideration would be futile. If the Commission meant strictly what it might be thought to be saying under point 2, Colby might think that no showing of statistics such as it now offers us under point 3 would have made any difference.

It seems to us that this case may involve a serious policy question of Rule 76.61(d)'s intended protection of noncommercial educational television, transcending the interest of this particular petitioner. Perhaps because of better financial stability, special protection is no longer needed for noncommercial educational television. But, if so, we wonder if the rule ought not to be changed by formal procedures, *cf. NLRB v. Wyman-Gordon Co.,* 1969, 394 U.S. 759, 762–64, 89 S.Ct. 1426, 1427–1428, 22 L.Ed.2d 709, 712–714 (a case where we won the war, but lost the battle), rather than by an interpretation which, we agree with Colby, would seem to eviscerate it.

■ At the least, if the Commission intends a substantive change, we believe it should "explain . . . its departure from prior norms," *see Secretary of Agriculture v. United States,* 1954, 347 U.S. 645, 653, 74 S.Ct. 826, 831, 98 L.Ed. 1015, 1023 (which we do not find that in *Amherst,* ante, it adequately did), and, to quote the Commission's brief in another connection, should have "an opportunity to . . . state the reasons for its action." Under all the circumstances we feel we should neither reverse the Commission, nor affirm it, but should remand for further consideration in the light of this opinion and such additional showing as Colby may present. We cannot, incidentally, think that Colby's fear that the Commission may have a closed mind is justified. *See, e. g., Big Valley Cablevision, Inc. v. FCC,* D.C.Cir., 1976, 529 F.2d 353,

offered to us by the Commission. Nor do we feel Colby will be prejudiced by the fact that Public Cable has incurred expense. A party cannot increase its rights by anticipating a favorable decision.