545 F.2d 204
 178 U.S.App.D.C. 126
 KIRO, INCORPORATED, Licensee, KIRO-TV, Seattle, Washington, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents,
Vanhu, Inc., Intervenor.
KIRO, INCORPORATED, Licensee of KIRO-TV, Seattle,
Washington, Petitioner,
v.
UNITED STATES of America and Federal Communications
Commission, Respondents,
United Community Antenna Systems, Inc., Intervenor.
 Nos. 75-1233 and 75-1390.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 8, 1976.
Decided Nov. 4, 1976.
 
 Leon T. Knauer, Washington, D. C., with whom Robert W. Barker and H. Michael Semler, Washington, D. C., were on the brief for petitioner.
 Julian R. Rush, Jr., Counsel, Federal Communications Commission, Washington, D. C., with whom Ashton R. Hardy, Gen. Counsel, Daniel M. Armstrong, Acting Associate Gen. Counsel, Federal Communications Commission, Carl D. Lawson and Samuel R. Simon, Attys., Dept. of Justice, Washington, D. C., were on the brief for respondents. Joseph A. Marino, Associate Gen. Counsel, Federal Communications Commission, Washington, D. C., at the time the record was filed also entered an appearance for respondents.
 Harry M. Plotkin, George H. Shapiro and Mary Candace Fowler, Washington, D. C., were on the brief for intervenor in No. 75-1390.
 Richard L. Brown, Washington, D. C., entered an appearance for intervenor in No. 75-1233.
 Before BAZELON, Chief Judge, TAMM, Circuit Judge, and JUSTICE,* United States District Judge for the Eastern District of Texas.
 Opinion for the court filed by BAZELON, Chief Judge.
 BAZELON, Chief Judge:
 
 
 1
 Petitioner KIRO, Inc. (KIRO), the CBS television affiliate in Seattle, Washington seeks review of Federal Communications Commission determinations in two separate but related proceedings.[1] KIRO had requested the Commission to prohibit certain Seattle cable systems, Vanhu, Inc. (Vanhu) and several subsidiaries of Viacom, Inc. (United Community) from prereleasing United States network programming by duplicating signals of Canadian stations which air the programming on an advance basis. At oral argument, we were informed the Commission had begun an extensive inquiry into the entire pre-releasing problem that it hoped to complete within six months. Docket 20649 (RM-2531). On February 17, 1976, we ordered this case held in abeyance for six months to enable the Commission to formulate "appropriate" remedial provisions. (unpublished order) p. 2. By letter dated August 13, 1976, the Associate General Counsel of the Commission indicated the Docket would not be concluded for an unspecified length of time. We now reach the merits.
 
 I. BACKGROUND
 
 2
 The Commission has been aware since it asserted jurisdiction over cable television in 1966 that cable systems could fractionalize the markets of local network affiliates by duplicating distant city network signals. The Second Report and Order on CATV, 2 FCC 2d 725, 747-52 (1966), contained a rule enabling local stations to prohibit nearby cable systems from duplicating network programming on its broadcast day. The Commission rejected a proposal to impose similar restraints on cable duplication of Canadian program signals. Although aware that then, as now, Canadian stations bought network programming on a pre-release basis, the Commission concluded that this problem was not sufficiently widespread to justify initiating rule-making proceedings. Reconsideration of the Second Report and Order, 6 FCC 2d 309, 316 (1967). However, the Commission indicated it would entertain petitions for special relief from this practice and, in fact, at first granted such relief if the cable system in question could not demonstrate why it should be withheld.[2]
 
 
 3
 In companion cases decided in 1970, Colorcable, Inc., 25 FCC 2d 195, and Columbia Broadcasting System, Inc., 25 FCC 2d 212, the Commission altered its policy with respect to duplication of Canadian signals. Noting there was no "right" to pre-release protection, the Commission held that such protection would be granted only when a station demonstrated that pre-releasing damaged its "ability to provide a programming service in the public interest." 25 FCC 2d at 197. The Commission observed that the pre-releasing in the cases before it was insubstantial,[3] and that the allegations about loss of revenue were speculative. More broadly, it concluded that stations had proved to be financially viable without such protection and that "whatever 'problem' exists seems to be on the verge of elimination."[4]
 
 
 4
 Since 1970, the Commission has maintained its policy of providing greater protection against cable duplication of signals that originate in the United States than those that originate in Canada. Under the current rules local stations are entitled to "simultaneous exclusivity protection." 47 C.F.R. § 76.92 et seq. They can require cable systems operating within a certain proximity to delete domestic distant city network programming which simultaneously duplicates the programming of the local stations. The Commission has reaffirmed Colorcable, Cable Television Report and Order, 36 FCC 2d 331, 338-39 (1972).
 
 II. THE INSTANT PROCEEDINGS
 
 5
 The facts in this case are simple and not in dispute. On November 2, 1973, Vanhu sought Commission certification for a new cable system that would carry three Canadian stations.[5] On March 26, 1974, United Community sought permission to add one Canadian station to the two it carried. Three other Seattle systems already carried the Canadian stations.[6] KIRO then sought special relief under 47 C.F.R. § 76.71. KIRO claimed the cable systems in question would pre-release 141/2 hours of its CBS network programming weekly, including 111/2 hours or roughly one half of its week prime time offerings, if the Commission did not intervene. KIRO did not, however, make a particularized showing of the harm that would ensue without pre-release protection. KIRO initially claimed the pre-releasing would destroy its market for network programs in its franchise area. (J.A. 22-3) KIRO later claimed it was "foreseeable that (it) would lose at least 20% and possibly 50% or more of its cable audience . . . within the franchise area." (J.A. 51, 82)
 
 
 6
 The Commission denied relief in both cases. In Vanhu, which was decided first, the Commission denied relief primarily because KIRO failed to make the particularized showing required by Colorcable. 47 FCC 2d at 1245. The Commission also noted that Vanhu would be competitively disadvantaged if denied the right to broadcast Canadian signals shown on other Seattle cable systems. Id. at 1246. The subsequent decision in United Community also was based upon a failure to satisfy Colorcable. However, Chairman Wiley wrote a concurrence in United Community, in which a majority of the Commission joined, endorsing a new rationale. The Chairman wrote that pre-released duplication of Canadian signals would produce an adverse impact similar to certain simultaneous release practices the Commission had previously eliminated.[7] Despite this, he concluded that the major networks could eliminate the problem more readily than the FCC by "encouraging" program distributors to stop selling network programming to Canadian stations on a pre-release basis.[8]
 
 
 7
 KIRO unsuccessfully sought reconsideration of each decision. In United Community KIRO argued that the concurring opinion had erred in its conclusion regarding the superior ability of the major networks.[9] (J.A. 236-37) In refusing to order reconsideration, the Commission stated
 
 
 8
 No evidence has yet been presented to require our conclusion that the television networks, perhaps in conjunction with their program supervisors, can not play an important role in alleviating this practice. 52 FCC 2d at 390.
 
 
 9
 This appeal ensued.
 
 III. THE MERITS
 
 10
 Although judicial review of agency determinations is limited, there are three reasons why the Commission's orders cannot be affirmed. First, the orders are based on two ostensibly contradictory rationales. Second, the rationality of relying on Colorcable is not apparent. Finally, the Commission's reliance on the major networks' asserted ability to resolve the pre-release problem is based on improperly noticed facts.
 
 
 11
 A. The rationales of the main and concurring opinions appear to be at odds. The premise of the Colorcable rationale is that adverse impact is not to be anticipated as a necessary result of cable pre-release of Canadian signals whereas the premise of the concurring rationale is that harm is to be anticipated. An administrative order can be affirmed on appeal only on the grounds on which the Commission relied. SEC v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1940). It follows that since the basis for the order cannot be discerned, it cannot stand.
 
 
 12
 B. Colorcable, which has never been judicially examined, conditions pre-release protection on a particularized showing of harm. However, as noted above, a network affiliate can require, without showing harm, a cable system operating within its market to defer rebroadcasting network programming obtained from distant city signals. The words of the dissenting Commissioner in Colorcable are instructive:
 
 
 13
 It seems to me that, in terms of both logic and equity, a cable system's carriage of a Canadian station's pre-released United States network programs, . . . is a more serious threat than another domestic station's simultaneous carriage of the same network service. Our rules clearly protect against the latter. We should also protect against the greater threat. Cox, Comm., 25 FCC 2d at 207.
 
 
 14
 In terms of appellate review, there is no apparent rational basis for granting less protection against the greater danger.
 
 
 15
 Furthermore, Colorcable was supported by certain factors that have ceased to be relevant. The Commission noted that the pre-releasing involved there was not significant and that the entire pre-release problem seemed "to be on the verge of elimination." 25 FCC 2d at 198. However, the problem evidently persists. KIRO now complains that roughly one half of its network prime time offerings will be pre-released weekly. In addition, the Commission has abandoned its former belief that the foreign pre-release problem is too minor to warrant rule-making.
 
 
 16
 In sum, although there may be a rational basis for the order on review, it is not apparent from the Commission's opinions.[10]
 
 
 17
 C. To the extent the Commission denied relief because of the superiority of private relief, that determination is based on improperly noticed facts. Section 556(e) of the APA states:
 
 
 18
 When an agency decision rests on official notice of a material fact not appearing in the evidence in the record, a party is entitled, on timely request, to an opportunity to show the contrary.
 
 
 19
 The Commission concluded that the major networks have superior ability to resolve the pre-release problem. This conclusion may or may not be correct. It is based, however, on evidence not in the record. KIRO sought an opportunity to attempt to rebut it, by seeking reconsideration in United Community.[11] We hold that the Commission's denial of KIRO's request for an opportunity to do is error requiring remand.
 
 
 20
 D. Finally, the Commission correctly observed that granting relief against the cable systems currently seeking certification could create competitive imbalances within the Seattle cable industry. The Commission suggests that this problem of imbalance may justify withholding relief. KIRO's position, on the other hand, is that if, as seems likely, the entire pre-release problem is not resolved by rulemaking in the foreseeable future, they should not be deprived of their only other means of obtaining relief. In fact, if the Commission were upheld in withholding relief against the cable systems involved in this case because of competitive imbalance, KIRO would never be able to obtain relief. KIRO would not be able to obtain relief when the franchises of the systems currently carrying Canadian signals come up for renewal because at that time granting relief would disadvantage those systems in relation to the systems now seeking certification. KIRO should not be denied relief entirely because relief must be granted in increments.
 
 CONCLUSION
 
 21
 For the reasons outlined above, the record in this case must be remanded to the Commission for further proceedings not inconsistent with this opinion.
 
 
 22
 It is so ordered.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 292(c)
 
 
 [1]
 The orders are reported at Vanhu, Inc., 47 FCC 2d 1244 (1974), recon. denied, 51 FCC 2d 211 (1975); United Community Antenna Systems, Inc., 49 FCC 2d 873 (1974), recon. denied, 52 FCC 2d 389 (1975)
 
 
 [2]
 Jamestown Cablevision, Inc., 6 FCC 2d 635 (1967); Northern Microwave Service, Inc., 7 FCC 2d 115, vacated and remanded, sub nom., Presque Isle TV Co. v. U. S., 387 F.2d 502 (1st Cir. 1967), modified in part, Northern Microwave Service, Inc., 21 FCC 2d 290 (1968); and General Electric Cablevision Corporation, 10 FCC 2d 739 (1967)
 
 
 [3]
 The Commission found that the pre-releasing in Colorcable involved about eight programs per week. The Commission concluded, "this is certainly not a 'significant number' in terms of either the entire broadcast day or even prime time." 25 FCC 2d at 198
 
 
 [4]
 The Commission assumed that a then recent ruling of the Canadian Radio-Television Commission would substantially if not totally eliminate the pre-releasing problem. 25 FCC 2d at 197. Under that ruling, American programming could comprise no more than 30% of a Canadian station's broadcast day, and no more than 40% of its prime time offerings. Although there is no evidence in the record as to whether this ruling was ever implemented, KIRO complained that roughly 50% of CBS's prime time programming would be duplicated from Canadian signals
 
 
 [5]
 Although the FCC has delegated to local governments authority to franchise cable systems, the Commission requires franchisees to obtain a certificate of compliance from the Commission before commencing operations. 47 C.F.R. § 76.31. When the cable systems involved in this case petitioned the Commission for certification, KIRO moved under the Commission's special relief rule, 47 C.F.R. § 76.7 to have conditions with regard to pre-releasing placed on the certificates
 
 
 [6]
 In fact, one of these systems received its authorization to carry Canadian signals in Colorcable. 47 FCC 2d at 1246
 
 
 [7]
 47 C.F.R. § 76.92 et seq. See section III B, infra
 
 
 [8]
 Chairman Wiley's admonition that the networks only take lawful steps suggests he realized that effective action might present antitrust problems
 
 
 [9]
 After United Community was decided, the Commission denied Vanhu's petition for reconsideration. Chairman Wiley concurred specially once again, reaffirming his opinion in United Community. He was joined by four of the other six commissioners
 
 
 [10]
 The Commission's decision to protect VHF interests at the expense of cable interests is not at issue in this case. The sole issue here is whether the Commission has rationally implemented this policy judgment. The Commission is, of course, free to reevaluate this policy
 The Commission could conceivably attempt to justify its decision by analogy to its Rocky Mountain Time Zone rules. Although network program is generally aired simultaneously throughout the country, due to regional peculiarities, this is not always the case in the Rocky Mountain area. Thus, simultaneous exclusivity would not always be effective in this area. The Commission originally met this problem by granting Rocky mountain stations "same-day" exclusivity in addition to simultaneous exclusivity. But the Commission recently abandoned this approach in favor of requiring aggrieved stations to show particularized harm before receiving protection.
 The analogy, however, is not persuasive. The Commission's initial same-day rule was based on the assumption that the staggered release problem in the Rockies was substantial and that individual stations were powerless to stop it. After examining an extensive survey, the Commission discovered neither assumption was correct. Few cable systems pre-released within the markets of TV stations. Furthermore, affected stations could take steps such has juggling tapes to alleviate the problem. Second Report and Order, 54 FCC 2d 229, 231. The foreign pre-release problem is different. In Seattle alone five systems pre-release or desire to pre-release network programming. Furthermore, the two week time lag is much greater than the one-hour differential in the Rockies, so that stations such as KIRO can not protect themselves.
 Nor does the fact that the special relief rule, 47 C.F.R. § 76.7, requires the petitioner to "state all pertinent facts" and "demonstrate the need for relief," § 76.7(c) by itself justify Colorcable. This provision is not authority for establishing a high threshold for relief; rather, it only is authority for requiring the showing required by the relevant substantive law to be made clearly.
 
 
 [11]
 KIRO never sought an opportunity to attempt to rebut this finding in Vanhu. That is because the majority of the Commission first made this finding in Vanhu in its decision to deny KIRO's petition for reconsideration