MERRILL–STEVENS DRY DOCK COM-
PANY, Plaintiff-Appellee,

v.

M/V "LAISSEZ FAIRE," etc., Defendant,

Pierce Langford III, Intervening Plain-
tiff-Appellee,

Continental Electronics Manufacturing
Company, etc., Intervenor-Appellant.

CONTINENTAL ELECTRONICS MANU-
FACTURING COMPANY, Plaintiff-
Appellant,

v.

STEAMSHIP M. V. LAISSEZ FAIRE,
etc., Defendant-Appellee,

Pierce Langford III, Claimant-Owner-
Appellee.

Nos. 27358, 27372.

United States Court of Appeals
Fifth Circuit.

Jan. 21, 1970.

[black redaction bars]

———◆———

James E. Tribble, R. Layton Mank, Robert G. Young, Blackwell, Walker & Gray, Miami, Fla., for Continental Electronics Mfg. Co., Inc.

William C. Norwood, Fowler, White, Collins, Gillen, Humkey & Trenam, David M. Turner, Miami, Fla., for appellees.

Before RIVES, BELL and DYER, Circuit Judges.

DYER, Circuit Judge:

Continental, in two consolidated appeals, seeks review in No. 27358 of an order of the District Court denying the motion of Continental, as intervenor, to set aside a default and Marshal's foreclosure sale of the vessel "Laissez Faire" because of fraud and inadequacy of price, or to set aside or modify the decree of foreclosure in order to protect Continental's interest of $315,000 in radio equipment that it installed aboard the vessel under a retained title conditional sales contract.

In No. 27372 Continental appeals from a summary final judgment entered against it and in favor of the claimant-owner Langford in an independent action brought against the vessel for recovery of the sum due and owing on the radio equipment, or alternatively, for the declaration of a constructive or resulting trust on the equipment. Being of the view that in No. 27358 the District Court's order must be modified to protect Continental's interest we reverse in that case and therefore find it unnecessary to reach the error asserted in No. 27372.

The essential facts are not in dispute. On February 10, 1966, Continental installed radio equipment costing $315,000.00 aboard the vessel "Olga Patricia", now known as the "Laissez Faire". Title to this equipment was retained by Continental. During the same month and thereafter Merrill-Stevens furnished labor, material and services to the vessel for which it became entitled to a maritime lien.

In the spring of 1966 Langford, having learned that the vessel was being prepared by World Wide Investments for use off the coast of Great Britain as an unauthorized broadcasting station, contributed $50,000 to the promoters of this venture. Thereafter, from time to time Langford and four of his associates made additional contributions to World Wide and others connected with the broadcast operation.

On January 1, 1967, Dan Fergus was given a promissory note for $183,000 by Viscaya, Inc., the then owner of the vessel, and a Preferred Ship's Mortgage encumbering the vessel which was recorded in the Republic of Honduras. Shortly thereafter Langford, without payment to Fergus of any further consideration, demanded and received an assignment of the note and mortgage from Fergus, with the proviso that "[T]his mortgage and this assignment does not include the radio equipment on board said vessel."

On April 18, 1967, Langford acknowledged the existence of Continental's claim to the equipment in writing and assured it that the claim would be recognized. In the fall of 1967 Langford and his four associates, having taken over the management of the vessel, decided to return it to Miami, Florida. Continental paid a portion of the insurance premium to cover the equipment on this voyage and, at Langford's request, Continental inspected and inventoried the vessel in Miami.

Langford and Continental agreed that if the vessel and radio equipment were sold as a package a better sale price could be obtained, and they agreed to work together to find a buyer for the vessel for at least $550,000. Langford further agreed in writing to pay Continental the first $250,000 of the initial

$400,000 received and all monies above the latter sum were to be divided equally. Langford informed Continental that he would foreclose his mortgage on the vessel so that it would be in his name, although at that time Langford in fact considered himself to be the owner. Subsequently Langford refused to pay the Merrill-Stevens charges and on April 24, 1968, Merrill-Stevens attached the vessel to enforce its maritime lien.

Without informing Continental of the pending litigation Langford, on May 24, 1968, intervened, asserted his mortgage interest and served notice of his suit by publication. Thereafter Merrill-Stevens and Langford obtained defaults and the District Court, finding "that all counsel for the parties herein are in agreement" entered a final judgment in favor of Langford subject to Merrill-Stevens' lien in the amount of $8,033.49 and ordered the Marshal to sell the vessel.

On July 18, 1968, Langford purchased the vessel for $65,000 at the Marshal's sale by a credit on the amount due on the note and mortgage. Langford paid the sum of $8,033.49 to Merrill-Stevens to extinguish its prior lien. On the same day the sale was confirmed by the court.

Continental first learned of the litigation when a representative of the company insuring the radio equipment for Continental was denied permission to board the vessel. Continental's intervention in No. 27358 to set aside or modify the decree of foreclosure was denied, and it suffered an adverse summary judgment in its independent action in No. 23732.

Continental's intervention and motion to set aside or modify the order of sale were premised upon its showing that Langford, the successful bidder at the Marshal's sale, was guilty of fraud and misrepresentation in withholding and failing to disclose to the Court that the mortgage and assignment which it foreclosed excluded the radio equipment of Continental, and that Langford was also guilty of fraud in misleading and deceiving Continental by asserting a paramount interest to the radio equipment after having assured Continental that it would respect its interest in the equipment. The District Court denied the motion. There was no exegesis to reveal the reasons for this action.

■ A District Court sitting in Admiralty may, in its sound discretion, reopen and modify its decrees and judgments and set aside the sale of a vessel on the ground of fraud, and an appellate court will not interfere except when there is an abuse of such discretion. *See* American Tramp Shipping and Development Corporation v. Coal Export Corporation, 4 Cir. 1960, 276 F.2d 570; Neville v. American Barge Line Company, 3 Cir. 1954, 218 F.2d 190; The A. J. Meerwald, D.C.N.J.1940, 37 F.Supp. 808. And when, as here, the purchaser is the party charged with fraud, and there are no other intervening interests that could be prejudiced, it would be antithetical to the very nature of the Admiralty Court, which gives judgment upon equitable principles, United States v. Cornell S. B. Co., 1906, 202 U.S. 184, 26 S.Ct. 648, 50 L.Ed. 987, to refuse to modify or set aside a sale even after confirmation to prevent a party from taking advantage of his own fraud. As Chief Judge Brown so aptly put it in Compania Anonima Venezolana De Nav. v. A. J. Perez Exp. Co., 5 Cir. 1962, 303 F.2d 692, 699:

> The Chancellor is no longer fixed to the woolsack. He may stride the quarter-deck of maritime jurisprudence and, in the role of admiralty judge, dispense, as would his landlocked brother, that which equity and good conscience impels. (footnote omitted).

■ Having determined that the District Court had the power to modify or set aside its order, was its refusal to do so an abuse of discretion? Langford points out that Continental does not dispute the validity of Merrill-Stevens' lien or its right to assert it. Continental

concedes this. Langford syllogistically then argues that had Langford not intervened the sale would have been proper and the successful purchaser of the vessel would have obtained good title. Therefore, says Langford, if he had not intervened, his mortgage would have been extinguished by the sale, the same position in which Continental now finds itself. But the syllogism is neither accurate nor does it immunize Langford from Continental's attack. Langford is in no position to stand under Merrill-Stevens' umbrella of innocence because it is Langford's own wrongdoing which forms the basis for Continental's claim for relief.

Langford next contends that there was no clear and convincing evidence of the existence of fraud. He argues that since Continental took inconsistent positions, i. e., that had it known of the sale it would have protected its own interests and, contrariwise, that it relied on Langford to obtain title to the vessel and split the proceeds of a subsequent sale, Continental did not rely on Langford and therefore there can be no fraud.

■■ While it is true, as Langford argues, that fraud is not presumed and must be proven by clear and convincing evidence, Saenz v. Kenedy, 5 Cir. 1950, 178 F.2d 417, we find no inconsistency in Continental's position with reference to the duty owed to it by Langford that would dilute a finding of fraud. Clearly Langford induced Continental to leave its radio equipment aboard the vessel with complete assurances that Continental's interest would be protected. Langford not only acknowledged that the equipment was not encumbered by the mortgage and assignment but Langford also owed Continental a good faith duty to refrain from using his mortgage interest to prejudice the rights of Continental. In these circumstances Continental was justified in relying on Langford to obtain title, sell the vessel, and divide the proceeds as they had agreed.

When Langford determined to use his position as mortgagee to acquire title in his own name without recognizing the rights of Continental he then owed the duty of informing Continental of the change in his position so that Continental would know that it could no longer rely on Langford to protect its interests and could take steps to protect itself. Instead, Langford lulled Continental into a sense of security and then breached his duty of disclosure to Continental. This would be a remarkable legerdemain if it succeeded.

Langford further insists that Continental was not on the qui vive in keeping informed of the whereabouts and the condition of such valuable radio equipment, and that Continental's negligence, rather than Langford's fraud, led to the predicament in which Continental found itself. In light of Langford's undisputed assurances to Continental, upon which it was entitled to rely, Langford's argument is tantamount to charging that Continental was negligent in trusting Langford to keep his word.

■ Finally, Langford urges that Continental did not record the conditional sales contract at the home port of the vessel in Honduras, and had it done so Langford would have had to give it notice under the Preferred Ship's Mortgage Act, 46 U.S.C.A. § 951. In view of Langford's *actual* notice of Continental's interest which he agreed to respect, we find this argument unpersuasive. In fact, a more likely inference to be drawn from the lack of recordation is that Continental relied on Langford's promises.

We entertain not the slightest doubt that Langford, without the payment of any consideration and by his fraud on the court and on Continental, ended up with Continental's radio equipment worth $315,000.00. No third parties are involved or could be prejudiced by such further proceedings as may be required to protect Continental's interest in its equipment.

Langford complains that Continental has not offered or tendered reimbursement of the sum that it paid to Merrill-Stevens. Merrill-Stevens' maritime lien was for labor, material and supplies furnished to the vessel at the request of the owner. No part of it was for repairs to the radio equipment. Without deciding whether the lien attached to the radio equipment, it was Langford's responsibility to discharge the debt. He considered himself the owner and was in fact the operator of the vessel. If he had paid Merrill-Stevens for its services, rather than suffering the vessel to be attached in rem, there is no doubt that he would not have had a right to recover any part or all of such a payment from Continental. To conclude that because Langford used the Merrill-Stevens action as a vehicle to fraudulently foreclose Continental's interest in the radio equipment, Continental must now, in order to undo the fraud, reimburse Langford, in whole or in part, would be entirely irrational.

The judgment, order for sale, and order confirming the sale of the "Laissez Faire" shall be modified to provide that Continental's radio equipment was and is excluded from the foreclosure and sale of the vessel, and the United States Marshal shall be ordered and directed to deliver an amended bill of sale to Langford excluding such equipment. The Marshal shall be further ordered to forthwith deliver the radio equipment to Continental.

No. 27358 is reversed and remanded with directions.

No. 27372 is moot in view of our disposition of the cognate appeal. The judgment below is vacated and the case remanded to the District Court to dismiss the proceedings as moot. Troy State U. v. Dickey, 5 Cir. 1968, 402 F.2d 515; Tyson v. Cazes, 5 Cir. 1966, 363 F.2d 742.

No. 27372 vacated, remanded with directions.