**COLLINS SECURITIES CORPORATION and Timothy Collins, Petitioners,**

**v.**

**SECURITIES AND EXCHANGE COMMISSION, Respondent.**

**No. 75–2200.**

United States Court of Appeals, District of Columbia Circuit.

Argued 16 Feb. 1977.

Decided 12 Aug. 1977.

As Amended on Denial of Rehearing Sept. 23, 1977.

James W. Beasley, Jr., Miami, Fla., for petitioners.

David Ferber, Sol. to the Commission, Washington, D.C., with whom David J. Romanski, Asst. Gen. Counsel, Securities and Exchange Commission and John M. Mahoney, Atty., Securities and Exchange Commission, Washington, D.C., were on the brief, for respondent.

Before WRIGHT, LEVENTHAL and WILKEY, Circuit Judges.

Opinion for the Court filed by WILKEY, Circuit Judge.

WILKEY, Circuit Judge:

The petitioners in this case are Collins Securities Corporation (CSC), a broker-dealer and investment adviser registered with the Securities and Exchange Commission (SEC or Commission), and its president, Timothy Collins. Petitioners seek to have set aside the 23 October 1975 decision of the Commission *In The Matter of Collins Securities Corporation,*[1] which concluded that petitioners had violated various antifraud provisions of the federal securities laws.[2] As the result of this conclusion, the SEC ordered 1) that the broker-dealer and investment adviser registrations of CSC be revoked; 2) that CSC be expelled from membership in the National Association of Securities Dealers, Inc.; and 3) that petitioner Collins be barred from association with any broker or dealer, provided that "after two years, he may apply to the Commission to become so associated in a position which is not directly or indirectly connected with the making of markets in securities."[3]

In reaching its conclusion that petitioners had violated federal securities laws, the Commission based its decision on the "preponderance of the evidence" standard of proof.[4] Because of the type proof involved in an alleged fraud type case and of the extremely serious consequences to the petitioners of the sanctions imposed by the SEC in this case, we believe it was error for the Commission to employ this standard of proof. We therefore remand this case to

1. 8 SEC Docket 250. The opinion is revised in part by 1934 Act.Rel. No. 11946, dated 22 December 1975, and reported at 8 SEC Docket 790. The Opinion is also reproduced in Joint Appendix (J.A.) at 1091.

2. The Commission found the following violations:
    1. CSC and Collins fraudulently manipulated the market for Big Horn from about 25 June to 25 July 1968, in violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5.
    2. CSC, aided and abetted by Collins, violated Section 10(b) of the Act and Rule 10b–6 from 22–25 July 1968.
    3. CSC, aided and abetted by Collins, violated Section 7(c) of the Act and Regulation T thereunder.
    4. CSC violated Section 17(a) of the Act and Rules 17a–3(a)(5) and 17a–3(a)(6), and Collins aided and abetted the violation of Rule 17a–3(a)(5).
    5. CSC violated Section 15(b) of the Act, Rule 15b3–1, Section 203(c) of the Investment Advisers Act of 1940 and Rule 204–1 thereunder in four instances, and Collins violated those Acts and Rules in one of the instances.

3. SEC Order Accompanying Opinion, J.A. at 1111.

4. SEC Opinion, J.A. at 1107–08.

the Commission for a reconsideration of the evidence under a higher standard of proof as outlined in Part II of this opinion.

In addition, since the issuance of the opinion and order *In The Matter of Collins Securities Corporation* on 23 October 1975, the Supreme Court has spoken to several major issues which relate to the proceedings here under review. Therefore, on remand we direct that the Commission reconsider petitioners' case in light of these recent precedents, in particular the decision in *Ernst & Ernst v. Hochfelder.*[5]

## I. BACKGROUND

For the reasons stated in Part II, *infra,* in this opinion we undertake to sketch out only the most basic factual underpinnings of this case. In defining the nature of the controversy presented to it in this case, the Commission stated:

> The major issue before us is whether [petitioners] *manipulated the market* for and fraudulently sold common stock of Big Horn National Life Insurance Company during the period from June 25 to July 25, 1968.[6]

Central to this case is the desire on the part of the petitioners to assist the Big Horn National Life Insurance Company of Wyoming in raising needed capital funds. If petitioners could successfully assist Big Horn in this regard, petitioner Collins believed that CSC would be able to attract additional investment advisory clients, as well as share in the various ventures conducted by Big Horn.

In order to raise the additional capital, a plan was suggested by petitioner Collins whereby the holders of certain stock purchase warrants of Big Horn would be encouraged to exercise those warrants to acquire the underlying common stock. If all of the warrants were exercised, Big Horn would receive an inflow of approximately $670,000 in additional capital, less expenses attributed to the distribution of the warrant stock.[7] But, because the warrants were exercisable at $5.00 per share, petitioner Collins' plan would be successful only if the market price of Big Horn should be at or above that level.

The various actions taken by the petitioners to induce the exercise of the warrants, which we do not detail here, form the basis for the Commission's action in this case. In the Commission's view, the petitioners "*manipulated* the market for Big Horn, and sold warrant stock to customers without disclosing that its price had been *artificially* inflated."[8] Petitioners, on the other hand, characterize their actions as an attempt to make a legitimate and bona fide market in Big Horn stock "for *investment,* and not with the intent to manipulate or artificially inflate the market of Big Horn stock."[9] Thus, the key issue in this case revolves around the distinction between *making* a market and *manipulating* a market; it is necessary at this point to examine the nature of the evidence relied upon by the Commission in reaching the conclusion that petitioners' actions fall into the latter category.

The Commission concedes that it did not rely on direct evidence that petitioners willfully manipulated the market in Big Horn stock. Rather, the Commission relied on inferences from the evidence which was adduced to reach the conclusion that illegal manipulation had occurred.[10] We have no quarrel with this technique of proof; indeed, we agree with the Commission that in many instances the use of this inferential mode of reasoning is necessary to prove a violation of the securities laws.[11] The legitimate need to rely on inferential evidence does, however, illuminate the ambiguity and lack of precision in the definition of

---

5. 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

6. SEC Opinion, J.A. at 1092 (emphasis added).

7. *See* Brief of SEC, Respondent, at 7.

8. SEC Opinion, J.A. at 1100 (emphasis added).

9. Brief for Petitioners at 36 (emphasis added).

10. SEC Opinion, J.A. at 1102.

11. Brief for SEC, Respondents, at 38.

many security law violations. We have no doubt that the SEC, as the expert federal agency in this field, possesses the necessary qualifications to draw the inferences and to construct a case in such a manner as to give concrete and faithful meanings to the imprecise statutory mandates.

Although we have confidence that the SEC can utilize inferential evidence in a proper and responsible manner, the fact remains that such evidence is at least somewhat weaker and less reliable than direct evidence of violations. In addition, the use of inferences, which is dependent on the exercise of discretion by an administrative agency and not a court, can, as in this case, lead to drastic sanctions which in effect amount to a deprivation of livelihood for the sanctioned parties.

The fact that such consequences can flow from an inferential mode of reasoning exercised by an administrative agency forms in large part our concern over the standard of proof to which these inferences are to be put. Thus, while we recognize the need to draw inferences to support allegations of security law violations, we discern a need to subject such evidence to a standard which will ensure that any remedial sanctions are imposed only in those circumstances where the evidence is of such a quality as to make the sanctions appear just and reasonable. It is this concern over the quality of proof in this proceeding to which we now turn.

## II. STANDARD OF PROOF [12]

### A.

As noted previously, the Commission relied on the "preponderance of the evidence" standard of proof in reaching its decision in this case.[13] The Securities and Exchange Act does not address itself specifically to the question of what standard of proof is required in an administrative proceeding before the Commission.[14] The only authority on point cited to us by the Commission consists of the Commission's own interpretation in its case law of the proper standard.[15] Under these circumstances, we believe, as the Supreme Court has stated in a similar context, that the issue of standard of proof "is the kind of question which has traditionally been left to the judiciary to resolve . . . ."[16]

The traditional standard of proof in a civil or administrative proceeding is the preponderance standard urged by the SEC as being appropriate in this case.[17] This rule is not, however, without exceptions. In *Woodby v. Immigration and Naturalization Service*,[18] the Supreme Court held that the preponderance standard was not sufficient in a deportation case. The Court recognized that a deportation proceeding was not a purely criminal prosecution, "but it does not syllogistically follow that a person may be banished from this country upon no

---

12. It is important to distinguish between "standard of proof" and "scope of review" in this context. Section 25 of the Securities Exchange Act of 1934, which confers jurisdiction on this court, also provides that "[t]he finding of the Commission as to the facts, if supported by substantial evidence, are conclusive." 15 U.S.C. § 78y(a)(4). The "substantial evidence" standard thus defines the scope of review which a court is to apply in reviewing evidence. As the Supreme Court has stated, there is an "elementary but crucial difference between burden of proof and scope of review." *Woodby v. Immigration and Naturalization Service*, 385 U.S. 276, 282, 87 S.Ct. 483, 486, 17 L.Ed.2d 362 (1966). The point to be made is that the "substantial evidence" standard does not in any way dictate the appropriate burden of persuasion to be applied in a proceeding before the agency.

13. *See* note 4, *supra.*

14. *In The Matter of Norman Pollisky,* 43 S.E.C. 458, 459 (1967).

15. *See In the Matter of Norman Pollisky,* 43 S.E.C. 458, 459–60 (1967); *In the Matter of James De Mammos,* 43 S.E.C. 333, 337 (1967), aff'd mem. (2d Cir., 13 Oct. 1976). *Harris, Clare & Co., Inc.,* Securities Exchange Act Rel. No. 8004 (1966); *Underhill Securities Corp.,* Securities Exchange Act Rel. No. 7668 (1965).

16. *Woodby v. Immigration and Naturalization Service,* 385 U.S. 276, 284, 87 S.Ct. 483, 487, 17 L.Ed.2d 362 (1966).

17. 9 Wigmore, Evidence § 2498 (3d ed. 1940).

18. 385 U.S. 276, 286, 87 S.Ct. 483, 487, 17 L.Ed.2d 362 (1966).

higher degree of proof than applies in a negligence case."[19] The Court noted that Congress had not specifically addressed itself to the degree of proof required in deportation proceedings; that "it is the kind of question which has traditionally been left to the judiciary to resolve"; that its resolution is necessary to evenhanded administration of the statute; and that definition would be sought in light of the "drastic deprivations that may follow when a resident of this country is compelled by our Government to forsake all the bonds formed here and go to a foreign land where he often has no contemporary identification."[20] Applying the standard previously adopted for denaturalization proceedings,[21] and expatriation cases,[22] the court held that the deportation order must be based on "clear, unequivocal and convincing evidence."[23]

We cannot say that the impact of the expulsion or suspension sanction involved in *Collins* here is as profound as that of deportation, akin to ancient banishment. Yet in *Woodby* the Court noted that its standard "is no stranger to the civil law,"[24] and "has traditionally been imposed in cases involving allegations of civil fraud."[25] There is ample case law support for this assertion.[26] However, our research indicates that an even more common standard applied to cases involving civil fraud is that of "clear and convincing evidence" to sustain the burden of proof. There are literally hundreds of cases decided by the United States courts of appeals in which the standard applied in fraud situations has been "clear and convincing evidence."[27]

■ In the present case we have an administrative agency with a charter for protection of the public, and the function of evaluating with sophisticated sensitivity the conduct of those operating in a regulated industry. Two elements appear relevant to the standard we should impose here: (1) the type case (fraud); (2) the heavy sanction (deprivation of livelihood). Given those elements, typical of many SEC cases, and given the type of circumstantial proof on which the SEC most often must rely, it appears to us that the "clear and convincing evidence" standard is the proper standard here; it will require the SEC to reach a degree of persuasion much higher than "mere preponderance of the evidence," but still somewhat less than "clear, unequivocal and convincing" or "beyond a reasonable doubt." We think that the insertion of the word "unequivocal," used by the Supreme Court in deportation-type cases, would require the SEC to meet a standard of proof in alleged market fraud cases which, given the circumstantial nature of the proof almost inevitably necessarily relied upon, would cause the regulatory agency to fail in its proof in any except the most exceptionally blatant case.

19. *Id.* at 285, 87 S.Ct. at 487.

20. *Ibid.*

21. *E.g., Schneiderman v. United States,* 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed.2d 1796 (1943).

22. *Gonzales v. Landon,* 350 U.S. 920, 76 S.Ct. 210, 100 L.Ed. 806 (1955).

23. 385 U.S. at 286, 87 S.Ct. at 488.

24. *Id.* at 285, 87 S.Ct. at 488.

25. *Id.* at 285 n. 18, 87 S.Ct. at 488.

26. *E.g., United States v. American Bell Telephone Co.,* 167 U.S. 224, 17 S.Ct. 809, 42 L.Ed. 144 (1897); *Clayton v. James B. Clow & Sons,* 327 F.2d 382 (7th Cir. 1964); *Public Motor Service v. Standard Oil Co. of New Jersey,* 69 App.D.C. 89, 99 F.2d 124 (1938).

27. *E.g., Merrill-Stevens Dry Dock Co. v. M/V "Laissez Faire,"* 421 F.2d 430, 433 (5th Cir. 1970); *Borowicz v. Chicago Mastic Co.,* 367 F.2d 751, 760 (7th Cir. 1966); *Mesnik v. C.I.R.,* 328 F.2d 147, 150 (7th Cir. 1964), *cert. denied,* 379 U.S. 827, 85 S.Ct. 55, 13 L.Ed.2d 37 (1964); *Lockwood v. Christakos,* 86 U.S.App.D.C. 323, 181 F.2d 805, 807 (1950).

See 9 Wigmore, Evidence § 2498, p. 329 (3d ed. 1940) wherein Dean Wigmore states that "some such phrase, as 'clear and convincing proof,' is commonly applied to measure the necessary persuasion for a charge of fraud." The federal and state case law is collected at p. 329, n. 13. Dean Wigmore incorporates in note 13, along with cases applying the "clear and convincing" standard, cases employing the higher standard of "clear, unequivocal, and convincing," but does this in the context of distinguishing both of these higher standards from the "mere preponderance" standard.

The Supreme Court has employed the "clear and convincing" standard in other contexts. In *Gertz v. Robert Welch, Inc.*,[28] in discussing the appropriate standard for recovery for libel of public officials or public figures, Mr. Justice Powell remarked that "public figures and those who hold governmental office may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." [29]

Likewise, the standard of "clear and convincing evidence" is equivalent to that in cases which have dealt with discipline of attorneys.[30] Disbarment or suspension is equivalent to the penalty imposed on Collins by the SEC here. While in *Charlton v. FTC* [31] we reversed an agency that had applied only a standard of substantial evidence, and said it was needful to have at least a preponderance of the evidence, it was clear in context that this court was referring to the type of clear and convincing evidence long required for discipline of attorneys. Therefore, on remand, the Commission is to reconsider the evidence in this case with a recognition that such a strict standard of proof is required for an expulsion or substantial suspension order.[32]

The Commission argues strenuously that, since broker-dealer administrative proceedings are remedial and not penal in nature, the preponderance standard is the appropriate standard to apply. While the primary purpose of these proceedings may well be to protect the public from further securities violations rather than to punish an individual for past misconduct,[33] the proceedings do often culminate, as here, with the imposition of severe sanctions on those found to have violated the statute. We are well aware that some of our sister circuits have repeatedly used language to the effect that "orders issued by the Commission are intended to be remedial, not punitive." [33a] Such labels are likely to reflect conclusions rather than analyses, and in any event are not determinative. In one sense, both labels are correct. From the point of view of the public and enforcement agency, the action of the SEC is "remedial." To the broker removed from his profession the action partakes of "punitive" impact.[33b] One would hardly say that removal of a robber from society should be classed as only "remedial," because it protects ordinary citizens from his probable repetition of the crime. The clear and convincing standard has been evolved in fraud cases as a balance—protecting the defrauded, and also protecting one faced with the surcharge of damages imposed for fraud. Its use in SEC disciplinary proceedings does not forego the

---

28. 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

29. *Id.* at 342, 94 S.Ct. at 3008.

30. *In re Adriaans,* 28 U.S.App.D.C. 515, 524 (1907); *In re Fisher,* 179 F.2d 361, 369–70 (7th Cir. 1950), *cert. denied sub nom. Kerner v. Fisher,* 340 U.S. 825, 71 S.Ct. 59, 95 L.Ed. 606 (1950); *In re Ryder,* 263 F.Supp. 360, 361 (E.D. Va.1967), *aff'd,* 381 F.2d 713 (4th Cir. 1967). *See also Dorsey v. Kingsland,* 84 U.S.App.D.C. 264, 265–66, 173 F.2d 405, 406–07, *rev'd on other grounds,* 338 U.S. 318, 70 S.Ct. 341, 94 L.Ed. 579 (1949).

31. 177 U.S.App.D.C. 418, 543 F.2d 903 (1976).

32. Whether a lesser action, say, probation or warning, may be satisfied with a lesser standard—an approach that would present some logical difficulties yet seem to harmonize with common sense—is an issue we need not resolve in this case. Nor do we insist on the "clear and convincing" standard in other than

fraud cases; our ruling is confined to this case involving the typical circumstantial proof of a fraud case and resulting in the severe sanction of deprivation of livelihood.

33. Brief for SEC, Respondents, at 63.

33a. *Beck v. SEC,* 430 F.2d 673, 674 (6th Cir. 1970). *Cf. Berko v. SEC,* 316 F.2d 137, 141 (2nd Cir. 1963); *Blaise D'Antoni & Associates, Inc. v. SEC,* 289 F.2d 276, 277 (5th Cir. 1961); *Pierce v. SEC,* 239 F.2d 160, 163 (9th Cir. 1956).

33b. *Cf.* Remedial measures to protect the public in the so-called "loyalty cases": "The Court in that case [*U.S. v. Lovett,* 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252] clearly held that a permanent proscription from Government service is 'punishment' and that punishment can be inflicted only upon compliance with the Sixth Amendment." *Bailey v. Richardson,* 86 U.S.App.D.C. 248, 257, 182 F.2d 46, 55 (1950) (*aff'd* 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352 by equally divided Court, 1951).

"remedial" aspect of protecting the public, for it will be used by the agency which is specially charged with such protection, and is able to make an informed appraisal of the significance of evidence concerning securities and markets.

While we would not go so far as to require the Commission to meet the criminal law's standard of proof "beyond a reasonable doubt," we do believe that the preponderance standard is not consistent with the nature of this proceeding. The standard of proof to which the agency is held must in some substantial measure be commensurate with both the nature of the proof and the arsenal of sanctions available to the agency; in this case, the standard of "clear and convincing evidence" serves this function of drawing a realistic correlation between the burden of persuasion and the available remedies.

### B.

■ Having put forth our reasons for adopting the clear and convincing standard of proof, it is now possible to explain our decision to avoid a detailed discussion of the evidence in this case. Any review of the evidence in this opinion would necessarily be selective in some degree, and we do not wish to convey the impression that the Commission may likewise be selective in its reconsideration. On remand, the *entire* evidentiary record must be reconsidered by the Commission. We do not wish to prejudice this reconsideration in any way with our view of the strength of the evidence. As noted previously, the Commission relies on inferential evidence to support its decision in this case; these inferences must be tested against the higher standard on remand.

34. *See note 5, supra.*

35. 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 1381 (1976).

36. *Id.*

37. *See, e.g., SEC v. Management Dynamics, Inc.,* 515 F.2d 801, 809 (2d Cir. 1975); *SEC v. Dolnick,* 501 F.2d 1279, 1284 (7th Cir. 1974); *SEC v. Pearson,* 426 F.2d 1339, 1343 (10th Cir. 1970).

It would serve no purpose to specify examples of the inferences which must be re-examined. Rather, we emphasize that the entire record must be scrutinized with particular care given to justifying all conclusions based on the clear and convincing standard.

### III. SUPREME COURT PRECEDENTS.

Subsequent to the Commission's decision here under review, the Supreme Court rendered its decision in *Ernst & Ernst v. Hochfelder.*[34] In the *Hochfelder* case the Court held that merely negligent conduct would not support a private damage action brought for violation of SEC Rule 10b–5. The Court indicated that some showing of scienter—"a mental state embracing intent to deceive, manipulate, or defraud,"[35]—was an essential element of a 10b–5 private damage claim.

In *Hochfelder* the Court expressly left open the question of the extent to which proof of scienter might be required in injunction actions brought by the SEC.[36]

Prior to *Hochfelder* the prevailing view in the federal courts was that a finding of negligence would support an injunction sought by the SEC.[37] Recent federal court decisions have, however, reconsidered this issue in light of *Hochfelder,* and have reached conflicting conclusions.[38] Therefore, the applicability of the scienter requirement to cases such as the one here under review is not settled.

Petitioners in this case argue that a finding of scienter is required,[39] while the Commission contends that no such finding is

38. *Compare SEC v. Bausch & Lomb, Inc.,* 420 F.Supp. 1226 (S.D.N.Y.1976) with *SEC v. World Radio Mission, Inc.,* 544 F.2d 535 (1st Cir. 1976); *SEC v. Universal Major Industries Corp.,* 546 F.2d 1044 (1976); *Arthur Lipper Corp. v. SEC,* 547 F.2d 171 (1976).

39. Brief for Petitioners at 23–24.

required by the *Hochfelder* holding.[40] We agree that the *Hochfelder* holding does not itself extend to the type of violations charged against petitioners in this case. The language and reasoning of the *Hochfelder* decision are, however, at least arguably capable of application in this context. Indeed, the Court, in its recent decision in *Santa Fe Industries, Inc. v. Green,*[41] has continued in its use of broad language in describing the Congressional intent underlying section 10(b) of the Securities Exchange Act of 1934. In ruling against permitting a private cause of action under Rule 10b–5 for breach of corporate fiduciary duty in *Green,* the Court stated, *inter alia,* that "[t]he language of § 10(b) gives no indication that Congress meant to prohibit *any conduct* not involving manipulation or deception."[42]

The applicability of the *Hochfelder* decision to enforcement actions brought by the SEC is a question that has not been decided in this court. In addition, we have before us only the views of the attorneys representing the Commission, and not the Commission itself, as to the applicability of the *Hochfelder* scienter requirement. Therefore, we think it appropriate that on remand the SEC consider fully the applicability of a scienter requirement in actions of this type. We emphasize that we intimate no view as to the applicability of the *Hochfelder* scienter requirement to this case. We hold only that the actions of the petitioners must be re-evaluated in light of significant Supreme Court precedents rendered since petitioners' case was decided by the Commission.

## IV. CONCLUSION

In summary, we hold that the use of the "preponderance of the evidence" standard of proof in this case was error. We remand the case to the Commission for a re-examination of the entire evidentiary record with the instruction that all alleged violations must be proved by the Commission with clear and convincing evidence. In addition, the Commission is instructed to consider fully the applicability of the *Hochfelder* decision to the fraud violations alleged in this case.

*Reversed and Remanded.*

---

40. Brief for SEC, Respondents, at 36–37.

41. 430 U.S. 462, 97 S.Ct. 1292, 1330, 51 L.Ed.2d 480 (1977).

42. *Id.* at 473, 97 S.Ct. at 1300 (emphasis added).