NASSAR AND COMPANY, INC., et al., Petitioners,

v.

SECURITIES AND EXCHANGE COMMISSION, Respondent.

NASSAR AND COMPANY, INC., and George M. Nassar, Appellants,

v.

SECURITIES AND EXCHANGE COMMISSION et al.

Nos. 76–1278, 76–1536.

United States Court of Appeals, District of Columbia Circuit.

Argued May 5, 1977.

Decided Oct. 3, 1977.

---

Carl L. Shipley, Washington, D.C., for petitioners in No. 76–1278 and appellants in No. 76–1536.

David Ferber, Sol., S.E.C., Washington, D.C., with whom Alan Rosenblat, Asst. Gen. Counsel and Howard B. Scherer, Atty., S.E.C., Washington, D.C., were on the brief, for respondent in No. 76–1278 and appellee in No. 76–1536.

Before BAZELON, Chief Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

Opinion for the Court filed by Chief Judge BAZELON.

Concurring opinion filed by Circuit Judge LEVENTHAL.

BAZELON, Chief Judge:

Both of these related cases involve an order of the Securities and Exchange Commission, entered February 12, 1976, which revoked the registration of Nassar, Inc. as a broker and dealer in securities, expelled it from membership in the National Association of Securities Dealers, Inc. and barred Mr. Nassar from association with any broker or dealer.[1] No. 76–1278 is before us on a petition to review the Com-

1. Nassar, Inc. and Mr. Nassar will be referred to either as "petitioner" or "Nassar." The Commission's order has not been published.

mission's order pursuant to Section 25(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78y(a).[2]  In No. 76–1536, Nassar appeals from a district court order dismissing for lack of jurisdiction his action which sought to have the Commission's order declared null and void.  Apart from the jurisdictional issue raised by the second case,[3] the issues in the two cases are virtually identical.  For the reasons expressed below, we vacate the Commission's order and remand for further consideration.

After a consolidated hearing involving several parties,[4] the administrative law judge found that petitioner and the others had "willfully" violated the antifraud provisions of the securities acts in connection with the sale of stock of Interamerican Ltd.[5]  On review, the Commission affirmed the ALJ's finding that petitioner had violated these provisions by his participation in a "massive fraud" designed by Interamerican's promoter, Hausner.  Hausner inflated the price of Interamerican stock by spreading the spurious claim that the company was ready to market an effective oral contraceptive whose "sustained release" feature made it suitable for sale in underdeveloped countries.  In furtherance of this scheme, Hausner took pains to convince Nassar of the efficacy and potential profitability of this product.

Nassar's allegedly unlawful activities occurred in his efforts to sell Interamerican stock to customers of his brokerage firm.  Essentially, the Commission found that Nassar's representations concerning the stock were unduly optimistic, lacked an adequate basis in fact, and were made on the basis of a wholly inadequate investigation.  In addition, he was found to have made unwarranted predictions about the price to which the stock might rise.  The Commission did not find, however, that Nassar was as culpable as Hausner.  Indeed, "[f]or present purposes" the Commission accepted as true Nassar's claim that he himself had been deceived by Hausner's representations and had sustained heavy losses on purchases of Interamerican stock.  J.A. 8.

After summarizing Nassar's activities, the Commission found that he had "willfully" violated § 10(b) of the Exchange Act, Commission Rule 10b–5 implementing that section, and § 17(a) of the Securities

---

2. That section states,

> A person aggrieved by a final order of the Commission entered pursuant to this title may obtain review of the order in the United States Court of Appeals for the District of Columbia Circuit  . . . .

3. Nassar recognizes that a petition for review in the Court of Appeals is a proper means for obtaining review of the Commission's order. Nevertheless, he argues that in this case the Administrative Procedure Act also authorizes review in the district court by declaratory judgment. This argument is wholly without merit. Section 703 of the APA, 5 U.S.C. § 703, provides that,

> The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action  . . . .

As noted above, § 25(a) of the Securities Exchange Act provides for review of Commission orders in the Court of Appeals.  Since that section also provides that such relief is exclusive, § 25(a)(3), and Nassar has not shown it to be inadequate in any way, the district court was correct in dismissing the declaratory action for lack of subject matter jurisdiction.  *See*

generally, *Investment Company Institute v. Board of Governors of the Federal Reserve System*, 179 U.S.App.D.C. 311, 551 F.2d 1270 (1977).

4. Nassar argues that his due process rights were infringed by having his case consolidated with others.  However, "[n]o principle of administrative law is more firmly established than that of agency control of its own calendar."  *Association of Massachusetts Consumers, Inc. v. S.E.C.*, 170 U.S.App.D.C. 118, 121, 516 F.2d 711, 714 (1975).  Of course, an agency does not have unlimited discretion to consolidate cases.  *Id.*  But petitioner has shown no prejudice from the Commission's decision to consider his case along with those of others involved in the alleged fraud.  The Commission carefully distinguished every aspect of its decision regarding Nassar—evidence, violation and sanction—from those of the other parties.  Nassar's other contentions regarding the fairness of his hearing are equally meritless.

5. Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a); section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); and Commission Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5.

Act. However, the Commission did not explain which activities violated which provision, or whether all of the activities violated both acts. Moreover, the Commission made no findings regarding Nassar's scienter; indeed, the order contains no discussion of the mental state required to make out violations of these provisions. The Commission did refer to Nassar's violation as being "willful" and his price quotations as being "reckless," J.A. 16, but it failed to explain if it was using these terms in a technical or a descriptive sense. Similarly, the reasons for affirming the suspension of Nassar were not explained in detail, the Commission merely noting:

> [W]e are unable to take a sanguine view as to the prospect of Nassar's future honesty. To permit one so prone to irrational euphoria and blatant exaggeration to continue to meddle with other people's money would be contrary to the public interest. J.A. 22.

These cases ensued. While review was pending, the Supreme Court issued its decision in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The Court held that a private action for damages will not lie under § 10(b) of the Exchange Act and Commission Rule 10b–5 in the absence of any allegation of "scienter," which it referred to as intent to deceive, manipulate or defraud. 425 U.S. at 193, 96 S.Ct. 1375.

The only substantive issue presented is whether, after *Hochfelder*, some form of scienter must be established in an adminis-

trative enforcement proceeding under § 10(b) and Rule 10b–5 as well as in a private action.[6] Another panel of this court recently addressed this question and concluded that it should be resolved in the first instance by the Commission itself:

> The applicability of the *Hochfelder* decision to enforcement actions brought by the SEC is a question that has not been decided by this court. In addition, we have before us only the views of the attorneys representing the Commission, and not the Commission itself, as to the applicability of the *Hochfelder* scienter requirement in actions of this type. We emphasize that we intimate no view as to the applicability of the *Hochfelder* scienter requirement to this case. We hold only that the actions of the petitioners must be re-evaluated in light of significant Supreme Court precedents[7] rendered since petitioners' case was decided by the Commission.

*Collins Securities Corp. v. SEC*, 183 U.S. App.D.C. 301, at 308, 562 F.2d 820, at 827 (1977). In deference to *Collins Securities*, therefore, we also remand this case to the Commission for reconsideration in light of *Hochfelder*.

The Commission attempts to distinguish *Hochfelder* on the ground that the case under review involves a violation of § 17(a). In *Hochfelder*, the Court recognized that on its face Rule 10b–5 covered behavior in which scienter was absent. Since the language of § 17(a) is virtually the same as that of Rule 10b–5,[8] the Commission rea-

---

**6.** Nassar also raises a spate of constitutional issues. Though we need not reach these issues because of our disposition of this case, we note that they appear meritless. Nor need we decide whether the Commission's order was supported by substantial evidence.

**7.** In addition to *Hochfelder*, *Collins Securities* also referred to the Supreme Court's recent decision in *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977).

**8.** Rule 10b–5 provides:
> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of

the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Section 17(a) provides:
> It shall be unlawful for any person in the offer or sale of any securities by the use of

sons that an action under § 17(a) will lie even in the absence of an allegation of scienter. Hence, the Commission regards § 17(a) as adequate support for its order. However, the Commission's order neither indicates which behavior violated § 17(a) nor whether violations of § 17(a) alone would have sufficed to support Nassar's suspension. Although on remand the Commission may rest on § 17(a) alone, "[the] administrative order [now under review] can be affirmed on appeal only on the grounds on which the Commission relied." *KIRO v. FCC*, 178 U.S.App.D.C. 126, 130, 545 F.2d 204, 208 (1976). Because the Commission's discussion of § 17(a) is not separate from its discussion of § 10(b), we cannot affirm its result on the basis of § 17(a) alone.

*Conclusion*

We vacate the Commission's order and remand the case to the Commission for reconsideration in light of this opinion and such further proceedings, if any, it deems appropriate. In connection with the remand, we note that Nassar maintains that the sanction ordered by the Commission is overly severe and hence arbitrary. We need not reach this issue at this time, since on remand the Commission may find no violation or may decide to impose a lesser sanction. However, should the Commission seek to reinstate this penalty it should articulate its reasons for doing so with greater particularity. The discussion in the order is simply too brief to enable this court to determine if the sanction ordered was based on a consideration of all the relevant factors and is in accord with Commission precedent.

*The order of the district court in No. 76–1536 is affirmed. The petition for review in No. 76–1278 is granted and that case is remanded to the Commission for further consideration not inconsistent with this opinion.*

LEVENTHAL, Circuit Judge, concurring:

The SEC decision revoking Nassar's registration issued prior to *Ernst*.[1] This court remands for reconsideration in the light of *Ernst*. I agree.

The pertinent consideration is not unrelated to the ruling in *Collins Securities Corp. v. SEC*, No. 75–2200, 183 U.S.App. D.C. 301, 562 F.2d 820 (1977), that an order revoking such registration must be based on "clear and convincing evidence." While that question is not involved in this case,[2] it identifies the care needed as a condition for revocation.

Even assuming that a scienter is needed for revocation of registration, that does not mean that what is required is the kind of subjective deceit that *Ernst* held to be required in an action for damages. As the Commission points out, a broker-dealer may be guilty of intentional misconduct if he deliberately commits certain acts even if he doesn't know they are forbidden by the Act or regulations. In other words, there is no requirement of specific intent that includes a specific element of knowledge of the per-

---

any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

1. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

2. The SEC did state in fn. 68 (J.A. 132), see note 4 of this opinion, *infra*, that this proceeding is governed by the standard of preponderance of evidence. However, it also stated that in any event there was clear and convincing

tinent rule of law.[3] A broker-dealer is under an obligation to learn the rule of law.

A difficult question is raised by the statement in the Commission's opinion that Nassar was engaged in grossly reckless conduct[4] and in failure to do any reasonable checking of assertions made to him by Hausner (J.A. 120).

*Hanly v. SEC*, 415 F.2d 589 (2d Cir. 1969), develops that standards for a securities dealer are strict, because, *inter alia*, "he implicitly represents that he has an adequate basis for the opinion he renders" and "[b]y his recommendation he implies that a reasonable investigation has been made . . . ." *Id.* at 596–97. *See also Hiller v. SEC*, 429 F.2d 856 (2d Cir. 1970).

In *Ernst*, the court explicitly refrained from deciding whether recklessness might be a basis of scienter for a damages action. 425 U.S. at 194 n. 12, 96 S.Ct. 1375. However, when we come to the SEC's control over the broker-dealers, we are dealing with a group that is under intense regulatory control and scrutiny. The Commission serves an important public interest in imposing and monitoring its controls. This function often involves evidence that re-quires sophisticated and sensitive appraisal. As we pointed out in *Collins Securities, supra*, in explaining why we refrained from the requirement used in deportation cases that the evidence be "unequivocal"—

In the present case we have an administrative agency with a charter for protection of the public, and the function of evaluating with sophisticated sensitivity the conduct of those operating in a regulated industry. Two elements appear relevant to the standard we should impose here: (1) the type case (fraud); (2) the heavy sanction (deprivation of livelihood). Given those elements, typical of many SEC cases, and given the type of circumstantial proof on which the SEC most often must rely, it appears to us that the "clear and convincing evidence" standard is the proper standard here; it will require the SEC to reach a degree of persuasion much higher than "mere preponderance of the evidence," but still somewhat less than "clear, unequivocal and convincing" or "beyond a reasonable doubt." We think that the insertion of the word "unequivocal," used by the Supreme Court in deportation-type cases,

evidence. On remand, it should apply the clear-and-convincing standard.

**3.** Scienter does not mean specific intent in the sense of knowing that the conduct is prohibited by law:

> It has been uniformly held that "willfully" in this context means intentionally committing the act which constitutes the violation. There is no requirement that the actor also be aware that he is violating one of the Rules or Acts.

*Gearhart & Otis v. SEC*, 121 U.S.App.D.C. 186, 191, 348 F.2d 798, 802 (1965) (citation omitted).

**4.** The only evaluation directed by the SEC specifically to petitioners' case consisted of the following:

Nassar's case is by no means on all fours with *Spangler's*. There are distinctions.[68] Nassar did not have some of the warnings that Spangler had. Nor does he have Spangler's prior history of misconduct.

[68] But the case against the Nassar respondents has been well established by "the reliable, probative, and substantial evidence" that the Administrative Procedure Act requires. 5 U.S.C. § 556(d). They say that this evidence is not "clear and convincing." We think it is. But the important thing is that the "clear and convincing" standard is inapplicable. A preponderance of the evidence is sufficient. See *M. V. Gray Investments, Inc.*, 44 S.E.C. 567, 575 (1971); *Norman Pollisky*, 43 S.E.C. 852, 861 (1968).

But these distinctions are outweighed by the similarities between the two cases. Like Spangler, Nassar was wholly indifferent to the boundaries that separate fact from fiction, naively credulous, and prone to embroider on the falsehoods with which Hausner fed him. In *Nassar's* case, as in *Spangler's*, we deal with a high-pressure sales effort that lasted for a long time, was unsupported by any semblance of an adequate foundation, and was characterized by grossly reckless price predictions.

Hence we are unable to take a sanguine view as to the prospect of Nassar's future honesty. To permit one so prone to irrational euphoria and blatant exaggeration to continue to meddle with other people's money would be contrary to the public interest. Like the administrative judge, we conclude that Nassar and his firm must be excluded from the securities business. SEC Opinion in Proceeding 3–1950 at 22 (Feb. 12, 1976), J.A. 132 (footnotes other than No. 68 omitted).

would require the SEC to meet a standard of proof in alleged market fraud cases which, given the circumstantial nature of the proof almost inevitably necessarily relied upon, would cause the regulatory agency to fail in its proof in any except the most exceptionally blatant case.[5]

It may be that the SEC will conclude that scienter for purposes of this kind of discipline must include intentional violation of a duty specifically imposed by a Commission rule or regulation, and also, and perhaps necessarily, include conduct amounting to gross recklessness when the Commission has imposed a duty to make a careful check.

The agency's power to cope with broker-dealer recklessness can be expressed in terms of fraud,[6] and even formally structured in fraud on the ground that the broker-dealer makes an implied representation that he has checked,[7] which would be false if indeed he has not. But that is not a wholly satisfactory analysis, although it has been used in some instances, for I would suppose that the Commission has the power to discipline a broker-dealer who has not

checked as required, even though misrepresentation might be negatived by advising his customers that he has not checked.

The law embraces a finding of fault in omissions, as in failure to perform a duty, and in failure to make a statement where silence is tantamount to concealment.

The concept that recklessness may serve as a surrogate for subjective intent is not new to the law. Indeed even for purposes of defining murder, recklessness may take the place of subjective intent.[8]

The fact that a further reflection and refinement is called for at this time should not set the Commission back in its objective of furthering the public interest. This is likely an instance where more ground may be covered with a slow start. While the Commission may resist many efforts to clasp *Ernst*, it can not free itself completely of the Court's concerns. Refinement of doctrine is not a scruple, it is a necessity. Set in sound perspective, however, *Ernst* should not impede the Commission's efforts to protect the public.

**5.** *Collins Security Corp. v. SEC*, No. 75–2200, 183 U.S.App.D.C. at 305, 562 F.2d at 824 (1977).

**6.** Counsel for the Commission puts this cast on the matter, invoking the SEC doctrine that predictions of a specific and substantial increase in price of a speculative security within a short time are "inherently fraudulent and cannot be justified." SEC Br. at 15–16, citing SEC opinions. The SEC considers this to be "a hallmark of fraud," *Alexander Reid & Co., Inc.*, 40 S.E.C.

986, 991 (1962). The Sixth Circuit has said that such representations bear "the badge or mark of fraud." *Henderson v. United States*, 202 F.2d 400, 404 (6th Cir. 1953).

**7.** *Hanly v. SEC*, 415 F.2d 589, 596–97 (2d Cir. 1969).

**8.** *United States v. Dixon*, 135 U.S.App.D.C. 401, 404–05, 419 F.2d 288, 291–92 (1969) (Leventhal, J., concurring).