985 F.2d 571
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gerald BEDKER, Plaintiff-Appellant,
v.
HARVESTER ENTERPRISE, a vessel, and Arctic Seafood, Inc., a
Washington corporation, Defendants-Appellees.
 No. 91-35817.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 6, 1992.
Decided Jan. 21, 1993.
 
 1
 Before HUG and POOLE, Circuit Judges, and PRO,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Appellant Gerald Bedker appeals from the district court's entry of judgment against him in the trial of this admiralty case. The district court found that Bedker was not entitled to either maintenance, cure or damages because his medical condition preexisted his employment and he intentionally and fraudulently concealed his medical condition in applying for employment. We affirm.
 
 
 4
 * This is a civil action in admiralty. Bedker filed suit against the vessel on which he worked, the Harvester Enterprise, and the owner of the vessel, Harvester Enterprise, Inc.[1] (hereinafter referred to as "Harvester"). Bedker's complaint alleged two causes of action: (1) a negligence claim under general maritime law and (2) an unseaworthiness claim under general maritime law. Bedker also sought maintenance, cure, lost wages and punitive damages.
 
 
 5
 Bedker, age 46, was hired by Harvester on or about February 26, 1988. Bedker then travelled from Seattle, Washington to Dutch Harbor, Alaska and began work on March 2, 1988. The Harvester was a fishing vessel that was operating in the Bering Sea off of the Alaska coast. Bedker worked sixteen hours a day as a processor aboard the Harvester, packing fish into pans, heading and gutting fish, and filleting the headed and gutted fish. Bedker was discharged from the Harvester on April 25, 1988.
 
 
 6
 Upon returning to Seattle, Bedker sought medical attention for his hands. The diagnosis was that he had suffered from frostbite and was suffering from Raynaud's phenomenon, a vascular disorder characterized by a particular susceptibility to the cold. Bedker is currently unemployed. He is also disabled and requires surgery as medical treatment for his hands.
 
 II
 
 7
 Findings of fact made by an admiralty court are subject to the clearly erroneous standard of review. Trinidad Corp. v. S.S. Keiyou Maru, 845 F.2d 818, 822 (9th Cir.1988) ( quoting In Re White Cloud Charter Boat Co., 813 F.2d 1513, 1517 (9th Cir.1987)). Under this standard, the court must affirm the district court's findings "unless, after review of all the evidence, we are left with a definite and firm conviction that a mistake has been committed." Id. ( quoting, White Cloud, 813 F.2d at 1517).
 
 
 8
 The district court found that Bedker had suffered from frostbite and Raynaud's phenomenon before he was employed by Harvester. The record supports this finding. One of Bedker's co-workers on the Harvester testified that Bedker said that he had gotten frostbite previously on another vessel.[2] On December 27, 1987, about two months before Bedker began work on the Harvester, he went to the Veteran's Administration Hospital in Seattle with complaints of a cold blue finger in the left hand as well as cool and purple hands and feet which had persisted for two or three months. He had also complained that the numbness in his hands and feet increased with exposure to cold. Physicians testifying for both parties identified these as symptoms that would suggest Raynaud's phenomenon, which can result from exposure to cold.
 
 
 9
 In addition to evidence that Bedker's Raynaud's was a preexisting condition, there is evidence that Bedker's hands were protected by plastic gloves and cotton liners while he worked, and replacement gloves and liners were readily available for practically[3] the entire time he worked on the Harvester. Bedker did not work outdoors and was not exposed to sea or wind conditions. The freezing water to which Bedker's hands may have at some point been exposed was of a minimal amount, about one-sixteenth of an inch in depth. Two of the physicians also testified that while a cold injury on one hand could cause a Raynaud's phenomenon in that hand, it could not cause a Raynaud's phenomenon in the other hand. However, Raynaud's also can be caused by smoking, and Raynaud's caused by smoking is not a local phenomenon; it can affect any and all fingers, hands and feet. The record shows that Bedker smoked cigarettes.
 
 
 10
 The district court also found that Bedker intentionally and fraudulently concealed his prior frostbite and Raynaud's conditions on the questionnaire he filled out prior to starting work aboard the Harvester. This finding is supported by the record.[4]
 
 
 11
 The district court relied upon Bedker's failure to disclose the problems with his hands when he applied to work on the Harvester. Bedker filled out a questionnaire, which asked if he had been treated for any of a number of ailments, including circulatory problems, and also asked if he had any physical defects or disabilities that require special work assignment. Although he testified that he thought he had gout[5] in his hands, Bedker admitted that the problems he had experienced with his hands should have suggested that he had poor circulation and also admitted that no doctor had told him that he had gout in his hands. Bedker also admitted that gout in his feet caused them to feel hot, not cold. Bedker was also shown a video depicting the nature of work on the Harvester and the weather conditions in which it was performed. Additionally, Bedker was told by both a friend who worked on the Harvester and the person who interviewed him what work on the Harvester would be like.
 
 
 12
 The district court also relied upon its impression of Bedker's credibility. At deposition and on direct examination, Bedker denied having any problems with his hands. Even when Bedker was confronted with his medical records on cross-examination, he did not admit that he ever complained about his hands. However, later in his testimony, Bedker testified in detail about the problems he had had with his hands and how he thought it was gout. Bedker also did not admit, although the questionnaire specifically inquired, that he had ever experienced back problems, although he had spent one month in the hospital due to a back problem a few months prior to applying for work aboard the Harvester. Bedker testified that he did not mention the back injury on the questionnaire because it was not bothering him at the time, but nonetheless mentioned a neck injury that occurred 25 years before and also did not bother him at the time.
 
 
 13
 Although there is no evidence that any doctor to whom Bedker went before he started work aboard the Harvester told him that he had Raynaud's phenomenon or that he was specifically asked if he had such a problem with his hands, the district court found that Bedker's credibility was such that his "lack of candor ... so undermined the Court's ability to believe his version of the facts as to compel the Court to conclude the plaintiff has failed to prove his case by a preponderance of the evidence." Because the district court's determinations regarding Bedker's credibility are entitled to deference, we conclude that this finding is not clearly erroneous. See Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 525, 529 (9th Cir.1962).
 
 
 14
 Because Bedker's maintenance and cure as well as his damage claims require that his injuries arise from his work on the Harvester, see Gardiner v. Sea-Land Service, Inc., 786 F.2d 943, 945-46 (9th Cir.), cert. denied, 479 U.S. 924 (1986) (maintenance and cure are duties of the shipowner to provide food, lodging, medical care and wages to a seaman who falls ill or becomes injured while in the service of the ship); Rodriguez v. Flota Mercante Grancolombiana, S.A., 703 F.2d 1069, 1072 (9th Cir.), cert. denied, 464 U.S. 820 (1983) (a seaman must prove causation in order to prevail on a negligence claim); Gebhard v. S.S. Hawaiian Legislator, 425 F.2d 1303, 1309 (9th Cir.1970) (an unseaworthiness claim requires that plaintiff was injured by a condition of or equipment on a vessel not reasonably fit for intended use), the district court properly found in favor of Harvester. The record shows that Bedker's injuries were preexisting and were not caused by the Harvester.
 
 
 15
 Additionally, Bedker is not entitled to recover on his maintenance and cure claim because he concealed a medical condition he knew or should have known was related to the illness or injury for which maintenance and cure are requested. Omar v. Sea-Land Service, Inc., 813 F.2d 986, 990 (9th Cir.1987) ( citing Sammon v. Central Gulf Steamship Corp., 442 F.2d 1028, 1029 (2d Cir.), cert. denied, 404 U.S. 881 (1971)); Tawada v. United States, 162 F.2d 615, 617 (9th Cir.1947).
 
 III
 
 16
 Federal Rule of Evidence 801(d)(1)(A) defines an inconsistent prior statement given under oath as nonhearsay. While Bedker argues that the district court erred in not admitting the deposition transcript of one of the testifying physicians, there is no showing in the record that the deposition testimony given by this witness was inconsistent with his trial testimony. The district court did not abuse its discretion in excluding this deposition testimony.
 
 IV
 
 17
 Bedker argues that the district judge was biased against him because his findings reflected an underlying prejudice and he entered final judgment without considering Bedker's objections to the findings. However, there is no showing of any bias in the record. To demonstrate that a trial judge was biased, a party must show that the judge's conduct reflected a disposition, based on extrajudicial sources, to treat him unfairly. Hansen v. Comm'r of Internal Revenue Srvc., 820 F.2d 1464, 1467 (9th Cir.1987) (citation omitted). Because a trial judge has wide discretion in conducting a trial, a clear and precise showing of prejudice must be made to demonstrate judicial misconduct. Id. (citation omitted). There is no showing of bias based on extrajudicial sources in this case. Furthermore, there is no showing that the district court abused its discretion in making any specific ruling.
 
 
 18
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Philip M. Pro, United States District Judge for the District of Nevada, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The owner of the vessel was incorrectly named in the complaint as "Arctic Seafood, Inc." instead of the actual owner. Harvester Enterprises, Inc. answered the complaint as the owner of the vessel. The vessel itself was never arrested and thus no answer was filed on its behalf
 
 
 [2]
 In addition to working on this unnamed vessel, the record shows that Bedker worked in cold climates while in the Navy
 
 
 [3]
 There is undisputed evidence that at the end of a trip there was a shortage of gloves. There is also evidence that some crew members were sometimes told to fillet fish without gloves. However, this evidence is not sufficient to show causation
 
 
 [4]
 Findings of fraud in admiralty cases must be supported by clear and convincing evidence. See, Merrill-Stevens Dry Dock Co. v. M/V "Laissez Faire", 421 F.2d 430, 432 (5th Cir.1970). The appellees have the burden of proving fraud as an affirmative defense
 
 
 [5]
 Gout is defined as "a constitutional disease characterized by painful inflammation of the joints, chiefly those in the feet and the hands, and esp. in the great toe." The Random House College Dictionary (Rev.Ed.1980)